**D.J. INVESTMENTS, INC. d/b/a Race Ready, Plaintiff-Appellant,**

**v.**

**METZELER MOTORCYCLE TIRE AGENT GREGG, INC., etc., et al., Defendants-Appellees.**

No. 84–1648
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 31, 1985.
Rehearing Denied March 1, 1985.

Irwin Lightstone, David Bell, Dallas, Tex., for plaintiff-appellant.

James Baker, Dallas, Tex., for defendants-appellees.

Before CLARK, Chief Judge, POLITZ and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

D.J. Investments, Inc., a Texas corporation doing business as Race Ready, brought this diversity action in the United States District Court for the Northern District of Texas against Metzeler Motorcycle Tire Agent Gregg, Inc., a Washington corporation, and Metzeler president Robert Gregg, a resident of Washington, alleging breach of contract and common law fraud. Defendants were served with process in Washington. Race Ready requested an injunction restraining defendants from cashing, transferring, or drawing against a letter of credit that Race Ready had delivered to defendants as a consequence of the alleged fraud, an order for the return of the letter of credit to Race Ready, and an award of actual and punitive damages against defendants. In response, defendants submitted a Motion to Dismiss under Fed.R.Civ.P. 12(b), arguing that the district court lacked personal jurisdiction over them. The district court, prior to discovery or proceedings on the merits, granted defendants' motion and issued a Memorandum Opinion and Order dismissing the case without prejudice on June 21, 1984. We conclude that under the *prima facie* showing made by appellant Race Ready, the district court had personal jurisdiction over the defendants. Accordingly, we reverse.

### FACTS

Appellee Metzeler is a wholesale supplier of Metzeler Tires, a specialty line of tires used to equip motorcycles for off-road travel. According to the complaint, Metzeler is the alter ego of its president and principal shareholder, appellee Gregg. Neither has

any place of business or employees in Texas, and neither has any Texas agent for service of process or permit to do business in Texas. In September 1983, appellant Race Ready's representative and secretary, James Hovers, contacted Robert Gregg by telephone to discuss the possibility that Race Ready might acquire the assets and distributorship rights of "Van Sickler's Race Ready," which held exclusive Metzeler distributorship rights in Texas. According to Race Ready's complaint, Hovers informed Gregg that Race Ready was unwilling to purchase the assets of Van Sickler's Race Ready *unless* defendants agreed to transfer the Metzeler distributorship to Race Ready. The parties discussed the proposal over the telephone a number of times prior to November 10, 1983. An affidavit by Gregg filed in support of the motion to dismiss states that these conversations "were by telephone from the State of Washington or the State of California." Gregg was apparently not in Texas at the time of these conversations. In addition, Gregg is alleged to have traveled to the Dallas-Fort Worth Airport on September 25, 1983, at which time Gregg allegedly carried on extensive discussions with Hovers concerning the proposed transfer of the distributorship rights and delivered information concerning Metzeler prices and programs to appellant.

Appellant's verified complaint alleged that during a telephone conversation held on November 10, 1983, Gregg agreed that Metzeler would transfer the sole Texas tire distributorship rights upon the conditions that Race Ready post an irrevocable letter of credit in the amount of $30,600.28 to secure Van Sickler's previous Metzeler Tire purchases, and that it purchase the assets of Van Sickler's. Appellant also alleged that during the November 10 discussion, Gregg assured Hovers that no Texas distributorship deal had been arranged with Ed Tucker Distr. or any other group, and represented that Race Ready would become the sole Texas distributor of Metzeler Tires upon Metzeler's receipt of the irrevocable letter of credit.

Race Ready subsequently purchased the assets of Van Sickler's Race Ready for approximately $400,000, and transmitted the letter of credit, which was on a Texas bank, by express mail on November 15. Hovers telephoned Gregg to inform him that the purchase had been completed and that the letter had been transmitted. Appellant alleged that during this conversation, Gregg again assured Hovers that the distributorship packet would be mailed to Race Ready once Metzeler received the letter of credit. In a letter dated November 21, however, Metzeler informed appellant that Metzeler did not plan to send the distributorship packet to Race Ready. Appellant demanded that defendants return the letter of credit, but they did not honor the demand. Appellant alleged that Metzeler's refusal to transfer the distributorship, as the parties had arranged, constituted a breach of their oral contract. Appellant also alleged that defendants committed fraud because at the time Gregg promised to transfer the sole distributorship rights to Race Ready, defendants already had designated Ed Tucker Distr. as the sole Texas distributor of Metzeler Tires. Therefore, at the time Gregg was supposed to have made his representations, he had no intention of carrying out his promises to transfer the distributorship.

### PERSONAL JURISDICTION

The district court determined that it lacked personal jurisdiction over defendants because Metzeler and Gregg's contacts with the forum state—Texas—were insufficient to satisfy the due process clause of the Constitution. In determining whether " 'a foreign corporation should be required to defend itself in a suit in Texas arising out of a contract between it and a Texas corporation, each case must be decided on its own facts.' " *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026, 1028 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984) (quoting *Southwest Offset, Inc. v. Hudco Publishing Co., Inc.,* 622 F.2d 149, 151 (5th Cir.1980)). In a diversity suit, two preconditions must generally be satisfied to allow

personal jurisdiction over nonresident defendants served out of state: (1) the nonresidents must be amenable to service of process under the forum state's long-arm statute (an issue which is governed by the law of the forum state); (2) if the state jurisdictional statute has been complied with, the assertion of jurisdiction over the nonresidents must be consistent with the due process clause of the Fourteenth Amendment (an issue which is governed by federal law). *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1265 (5th Cir.1983); *Hydrokinetics*, 700 F.2d at 1028 & n. 4; *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332 (5th Cir.1982), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983); *Walker v. Newgent*, 583 F.2d 163, 166 (5th Cir.1978), *cert. denied*, 441 U.S. 906, 99 S.Ct. 1994, 60 L.Ed.2d 374 (1979). To satisfy the latter condition that the exercise of jurisdiction must be consistent with the due process clause, this Court has outlined two requirements: (a) the nonresidents must have some minimum contacts with the forum resulting from an affirma-

tive act or acts on their part[1]; (b) it must not be unfair or unreasonable to require the nonresidents to defend the suit in the forum state.[2] *Growden v. Ed Bowlin and Associates, Inc.*, 733 F.2d 1149, 1150 (5th Cir.1984); *Hydrokinetics*, 700 F.2d at 1028; *Southwest Offset*, 622 F.2d at 152; *C & H Transp. Co., Inc. v. Jensen & Reynolds Constr.*, 719 F.2d 1267, 1269 (5th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1930, 80 L.Ed.2d 475 (1984).

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the party who seeks to invoke the jurisdiction of the federal court bears the burden of establishing the district court's jurisdiction over the nonresident. *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir.1982); *Southwest Offset*, 622 F.2d at 152; *Brown*, 688 F.2d at 332. If the question whether jurisdiction lies in federal court is to be decided on the basis of facts contained in the parties' affidavits, however, the party who bears the burden need only present a *prima facie* case for personal jurisdiction; proof by a preponderance of

1. In determining whether the "affirmative act prong" has been satisfied, the "number of contacts with the forum state is not, by itself, determinative." *Hydrokinetics*, 700 F.2d at 1028; *Brown*, 688 F.2d at 333. What is more significant is whether there has been some act by which the nonresident " 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' The defendant's conduct and connection with the forum state must be such that [it] should reasonably anticipate being haled into court in the forum state." *Growden v. Ed Bowlin and Associates, Inc.*, 733 F.2d 1149, 1151 (5th Cir.1984) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)); *Hydrokinetics*, 700 F.2d at 1028; *Brown*, 688 F.2d at 333. A nonresident purposefully avails itself of the benefits and protection of the forum's laws both by engaging in activity in the state and by engaging in activity outside the state that has "reasonably foreseeable consequences in the state." *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268 (5th Cir.1981). "Considerations such as the quality, nature, and extent of the activity in the forum, the foreseeability of consequences within the forum from activities outside it, and the relationship between the cause of action and the contacts, relate to whether it can be said that

the defendant's actions constitute 'purposeful availment.[']" *Prejean*, 652 F.2d at 1268; *Hydrokinetics*, 700 F.2d at 1028. Unilateral activity by the party who claims some relationship with the nonresident, however, cannot satisfy the requirement of contact with the forum state. *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239; *Hydrokinetics*, 700 F.2d at 1028.

2. Maintenance of the suit must not offend " 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The "fairness prong" requires the court to consider, "among other things, the interest of the state in providing a forum for the suit, the relative conveniences and inconveniences to the parties, and the basic equities." *Southwest Offset*, 622 F.2d at 152; *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 498 (5th Cir.1974); *Hydrokinetics*, 700 F.2d at 1028; *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268 n. 15 (5th Cir.1981); *Growden v. Ed Bowlin and Associates, Inc.*, 733 F.2d 1149, 1150 n. 1 (5th Cir.1984). "[T]he fairness prong cannot compensate for or overcome the requirement of some minimum contacts with the forum state." *Growden*, 733 F.2d at 1150–51 (footnote omitted).

the evidence is not required. *Wyatt,* 686 F.2d at 280; *Union Carbide Corp. v. UGI Corp.,* 731 F.2d 1186, 1189 (5th Cir.1984); *Walker,* 583 F.2d at 166; *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 491 (5th Cir.1974); *Brown,* 688 F.2d at 332; *Jetco Elec. Indus., Inc. v. Gardiner,* 473 F.2d 1228, 1232 (5th Cir.1973). Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists. *Brown,* 688 F.2d at 332; *Wyatt,* 686 F.2d at 280.

■ The district court appears to have assumed that appellant satisfied the initial test, which concerns the amenability of defendants to service of process. Appellant seeks to establish the existence of personal jurisdiction under Tex.Rev.Civ.Stat.Ann. art. 2031b (Vernon 1964).[3] This long-arm statute permits service of process on nonresidents who have engaged in business in Texas, so long as the cause of action arises out of such business.[4] The statute defines "doing business" in Texas to include the commission "of any tort in whole or in part" within the state by a nonresident natural person or foreign corporation. Resolving conflicts in favor of appellant and taking allegations in its complaint as true, we hold that the nonresident defendants are amenable to service of process under Article 2031b. In a May 31, 1984 affidavit filed below in opposition to the motion to dismiss, Hovers swore that defendant Gregg traveled to Texas on September 25, 1983, where he "represented to [Hovers] that Race Ready would become a Metzeler distributor upon the payment of prior purchases made by Dale VanSickler [sic] and the acquisition of Mr. Van Sickler's distributorship," and that Gregg on that occasion also carried on "extensive discussions [with appellant] concerning the transfer of the Texas distributorship ... and the appointment of Race Ready as the Texas distributor" and "discussed Race Ready's plans once it became a Metzeler distributor." Appellant's complaint alleged in substance that the defendants fraudulently misrepresented to plaintiff that it would become the sole Texas distributor for Metzeler products in order to induce plaintiff to pay the

---

3. Article 2031b provides in part:

"Sec. 2. When any foreign corporation ... or non-resident natural person, though not required by any Statute of this State to designate or maintain an agent, shall engage in business in this State, in any action in which such corporation ... or non-resident natural person is a party or is to be made a party arising out of such business, service may be made by serving a copy of the process with the person who, at the time of the service, is in charge of any business in which the defendant or defendants are engaged in this State, provided a copy of such process, together with notice of such service upon such person in charge of such business shall forthwith be sent to the defendant or to the defendants principal place of business by registered mail, return receipt requested.

"....

"Sec. 4. For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation ... or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State."

4. The Supreme Court of Texas has given Article 2031b a broader construction; the court has held that Article 2031b's requirement that the cause of action must arise from, or be connected with, the act or transaction which the nonresident consummated in Texas "is unnecessary when the nonresident defendants['] presence in the forum through numerous contacts is of such a nature ... so as to satisfy the demands of the ultimate test of due process." *Hall v. Helicopteros Nacionales de Colombia, S.A.,* 638 S.W.2d 870, 872 (Tex.1982), *rev'd on other grounds,* —— U.S. ——, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). We need not reach the issue whether the nonresidents have sufficient contacts with Texas to satisfy "the ultimate test of due process" because we find that appellant has made a *prima facie* case for personal jurisdiction by alleging that appellees committed a tort in whole or in part within the state, which action gave rise to the injury alleged in this suit. *See Union Carbide,* 731 F.2d at 1189.

$30,600.28 debt owed by Van Sickler's and that when these representations were made defendants had no intention of performing in accordance with them. These factual allegations, if taken as true, are sufficient to demonstrate that defendants committed a tort "in whole *or in part*" in Texas,[5] and therefore are sufficient for service of process under the Texas long-arm statute. Tex.Rev.Civ.Stat.Ann. art. 2031b.

■ We disagree with the district court's determination that personal jurisdiction is lacking because defendants' contacts with the state were insufficient to satisfy the due process clause of the Fourteenth Amendment.

As noted, the number of contacts between the nonresident defendants and the forum state are not alone determinative. The more important issue is whether the defendants engaged in activity, including activity "outside the state that has reasonably foreseeable consequences in the state," by which they purposefully availed themselves of the benefits and protections of the forum state's laws. *Prejean*, 652 F.2d at 1268. Appellant made a *prima facie* showing of several facts that this Court previously has found sufficient to demonstrate such purposeful availment: Gregg had several telephone conversations with appellant in Texas, at least some of which were apparently "from" Gregg in Washington or California, and Gregg personally met with appellant in Dallas, Texas, to discuss the transfer, all as part of defendants' ongoing effort to commit fraud on Race Ready; defendants' and Race Ready's contract called for partial performance *by defendants* in the forum state; the subject matter of the contract was the

transfer of defendants' then-existing Texas distributorship; the parties did *not* provide *against* the possibility that defendants might have to defend a suit in Texas, whether by a choice of law provision or by some other device.

In the *Brown* decision, *supra*, the appellant brought suit against three nonresident defendants, none of whom was qualified to do business in Mississippi. 688 F.2d at 330. The district court dismissed the action for want of jurisdiction, and this Court reversed. One of the defendants had initiated a single telephone call into the forum state, during which he allegedly committed the intentional tort of defamation. The claim of jurisdiction was predicated on this single telephone call. 688 F.2d at 332. We noted that the "injurious effect of the tort, if one was committed, fell in [the forum state], which the defendant could easily have foreseen. The injury was felt entirely by a ... resident and a ... corporation [of the forum state]." 688 F.2d at 333–34. We also found that the interests of convenient and effective relief, and of the proximity of witnesses to the forum, favored exercise of jurisdiction in the forum selected by the *Brown* plaintiff.[6] *Id.* In the instant case, there were telephone conversations with plaintiff in Texas during which defendants carried out their supposed plan to fraudulently induce Race Ready to post a letter of credit. Though the initial contact was not made by defendants, it appears that some of the subsequent calls may have originated with them. Unlike the *Brown* case, Gregg additionally carried out defendants' alleged plan by personally appearing in Texas, where he carried on "extensive" conversations and made inten-

5. *Foster v. Reed*, 623 S.W.2d 494, 495–96 (Tex. Civ.App.—Beaumont 1981, no writ) (a promise to do something in the future forms the basis of actionable fraud in Texas if it is shown that the promisor, at the time he made the promise, had no intention of performing it); *Pelton v. Witcher*, 319 S.W.2d 400, 403 (Tex.Civ.App.—Fort Worth 1959, writ ref'd n.r.e.) ("[A] promise to do something in the future, if material, if made without the intention to perform, which in-

duced the execution of the contract, and the failure to perform which resulted in injury to the parties relying upon such promise, may constitute actionable fraud. This seems to be the rule in Texas.").

6. *See supra* note 2 for the relevance of these factors under the "fairness prong" of the due process test.

tional misrepresentations about the proposed transfer. The injurious effect of the alleged tort likewise fell in Texas: appellant did not receive the promised right to take over the existing distributorship of Metzeler Tires in Texas; appellant purchased a Texas business that it would not have acquired had it known that the business did not carry the distributorship rights; appellant posted a letter of credit on a Texas bank. Under this combination of facts, we find that defendants "should reasonably [have] anticipated" that they might be haled into court in Texas.

We find additional support for our conclusion in the facts of the *Union Carbide* decision, *supra*, in which we affirmed the district court's finding that it had personal jurisdiction over a nonresident defendant. The *Union Carbide* defendant, a former executive for Union Carbide, used confidential information he had acquired while working for the company to benefit another corporation. By acquiring this information, the executive's new corporation was able to underbid Union Carbide's contract price for oxygen sold in Texas and to induce a Texas company to breach a contract in order to accept such lower prices. We found that the executive's activities "were purposeful, directed at Texas, and sufficiently related to [the] cause of action" to support the exercise of jurisdiction in Texas. We noted that Union Carbide's injury occurred in Texas and that the company had established a *prima facie* case that the defendants committed a tort partially in Texas. 731 F.2d at 1188, 1190.

In the instant case, defendants also engaged in purposeful activity which was directed at Texas; the controversy centered around which company would be permitted to continue as sole Texas distributor of Metzeler Tires. Some of the tortious activity took place in the state and the injurious effect fell entirely within the forum state. Finally, the instant cause of action for breach of contract and fraud is related directly to the tortious activities which appellant cites as contacts which give rise to personal jurisdiction. Exercise of jurisdiction in the instant case would not be unfair or unreasonable so as to violate the due process clause.

The district court relied on our decision in *Hydrokinetics, supra*, in deciding that personal jurisdiction was lacking. We find that case inapposite, however. In *Hydrokinetics*, we emphasized no less than eight times that the parties had agreed that their contract was to be governed and construed according to Alaska law rather than the law of the forum state, Texas. 700 F.2d at 1027–31 & n. 3. Therefore, we concluded that the defendant would not reasonably expect Texas law to govern enforcement of the contract in a diversity suit. 700 F.2d at 1030. Here, however, there is no evidence of such a choice-of-law provision. In *Hydrokinetics*, we also noted that "no performance by [the defendant] was to take place in Texas, other than perhaps the payment for the goods." There, delivery of the goods was to be made in Alaska rather than in the forum state. We held that the plaintiff could not establish jurisdiction based on its own, unilateral activity in Texas where the defendants had insufficient contacts with and were not bound to perform in Texas. 700 F.2d at 1029–30. The instant case again is distinguishable because a material part of defendants' performance included matters necessary and appropriate to appellant's functioning as defendants' Texas distributor, such as mailing the distributorship packet to appellant in Texas. The significance of this distinction is illustrated by our discussion in *Hydrokinetics* of the *Southwest Offset* and *Product Promotions* cases. We noted that in *Southwest Offset*, a necessary part of the defendant's contract performance required it to mail camera-ready copies of telephone directories to the forum state; relying in part on this fact, we concluded that jurisdiction lay over the defendant. 700 F.2d at 1030 (citing *Southwest Offset*, 622 F.2d at 152). Similarly, we noted that in *Product Promotions*, the defendant

availed itself of the privilege of conducting business in Texas because, among other things, the contract "required performance by [the defendant] (the delivery of the product which was the subject of the contract) in Texas." Moreover, *Hydrokinetics* stressed that the *Product Promotions* contract contained no choice-of-law provision. 700 F.2d at 1030 (citing *Product Promotions*, 495 F.2d at 497). We believe the instant facts are closer to those of the *Southwest Offset* and *Product Promotions* decisions than to *Hydrokinetics*.

In its Memorandum Order and Opinion, the district court observes that this Court held that the *Hydrokinetics* defendants lacked sufficient contacts with the forum even though the defendants held some of their contract negotiations in Texas. Extending on the *Hydrokinetics* decision, the district court held that the fact that Gregg visited Texas is insufficient to establish personal jurisdiction. This Court stated in *Hydrokinetics:*

> "Although the bargain may have been cemented in Texas when [the plaintiff] accepted [the defendant's] offer, the significance of that is diminished by the provision specifying that the agreement be governed and construed according to the laws of the state of Alaska. We do not hold that the facts relied on by [the plaintiff] in support of its contention that the district court in Texas has jurisdiction over the person of the defendant are not relevant to the determination; we merely conclude that, considering the totality of the facts of this case, the necessary inference of purposeful availment is not supported." 700 F.2d at 1029–30.

Again, the parties in the instant case did not provide for a choice-of-law provision directing that the law of another state would apply. Moreover, defendants were required as part of their performance to mail material to appellant in Texas; the contacts with Texas were not fortuitous, as they largely were in *Hydrokinetics*, for here the subject matter of the contacts concerns the selection of a Texas successor to the defendants' existing Texas distributorship. Finally, we note that the underlying controversy in *Hydrokinetics* was a pure contract dispute. 700 F.2d at 1027. In the instant case, however, appellant also alleges that defendants committed intentional fraud at least partially in Texas. In *Brown*, we considered the commission of an intentional tort, the injurious effect which was felt in the forum state, to be a factor supporting jurisdiction in the forum state. The state in that circumstance has an interest in providing a forum for the suit.[7] 688 F.2d at 333–34.

We express no opinion whether appellant's contract and fraud claims have any merit whatsoever. We hold only that, on the totality of these facts, an adequate *prima facie* showing was made that the defendants had sufficient contacts with Texas for the district court to exercise personal jurisdiction.

The judgment of dismissal is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

REVERSED and REMANDED.

7. *See supra* note 2.