**WNS, INC., Plaintiff–Appellant,**

v.

**James Larry FARROW and Mary Dee Farrow, Defendants–Appellees.**

No. 88–6065.

United States Court of Appeals, Fifth Circuit.

Sept. 22, 1989.

Lee L. Kaplan, David Hricik, Baker & Botts, Houston, Tex., for plaintiff-appellant.

Daniel J. Kasprazak, Glenda Hobbs Kirsch, John T. Johnston, Calvin, Dylewski, Gibbs, Maddox, Russell & Verner, Houston, Tex., for defendants-appellees.

Before CLARK, Chief Judge, JOHNSON and SMITH, Circuit Judges.

JOHNSON, Circuit Judge:

Plaintiff WNS, Inc. (WNS) appeals an order of the district court dismissing its lawsuit against defendants James Larry Farrow and Mary Dee Farrow for lack of personal jurisdiction. Persuaded that sufficient contacts exist between the Farrows and Texas to support the exercise of personal jurisdiction over the Farrows in federal district court in Texas, we reverse and remand.

## I. FACTS AND PROCEDURAL HISTORY

The jurisdictional issue presented by the instant appeal evolves out of the attempt by plaintiff WNS to bring suit against the defendant Farrows in federal district court in Texas. WNS filed its action against the Farrows on December 18, 1987, asserting both tort and contract claims arising from transactions and negotiations occurring in Texas and Georgia between WNS and the Farrows regarding the purchase and operation of a "Deck the Walls" franchise. The following is a brief summary of the facts relevant to the instant appeal.

WNS is a Texas corporation located in Houston, Texas, which licenses the Deck the Walls trade name, and franchises a comprehensive system for opening and operating a Deck the Walls store. In maintaining this system, WNS provides franchisees desiring to operate a Deck the Walls store with a complete program for operating such a business. In the instant appeal, the Farrows, who are residents of Georgia, contacted WNS at its Houston office in March 1986 for the purpose of one or both of them applying to become Deck the Walls store franchisees. As part of the process of becoming a Deck the Walls franchisee, an individual applicant is required by WNS to travel to Houston for an extensive formal interview. Accordingly, on or about March 7, 1986, the Farrows travelled to Houston for the purpose of meeting with WNS employees for the above formal interview and allegedly to negotiate and structure a franchise agreement.

At this point, it should be noted that the Farrows dispute the above proposition that they travelled to Houston for the purpose of becoming Deck the Walls franchisees; instead, the Farrows maintain that they travelled to Houston merely for a "social visit" to learn more about the virtues of the company from the WNS staff. WNS asserts, however, that in addition to negotiating and structuring a franchise agreement with WNS during the Houston visit, the Farrows also completed an application for a Georgia franchise of Deck the Walls which both Mr. and Mrs. Farrow signed. Moreover, WNS maintains that, during the Houston visit, the parties negotiated specific terms for the following three contracts: (1) a franchise agreement to buy a franchise for $171,857 to operate a Deck the Walls store in Georgia, (2) a loan/lease agreement to enable the Farrows to oper-

ate the Deck the Walls store in Georgia before permanent financing was in place, and (3) a sublease agreement for a space in a shopping center in Georgia for the Deck the Walls store.

Thereafter, the Farrows returned to Georgia and subsequently mailed a cashier's check to WNS in partial payment of their financial obligations under the franchise agreement. On the same day that the Farrows mailed the above cashier's check, WNS transmitted to the Farrows a copy of the franchise agreement for their signatures. In April 1986, the Farrows sent to WNS in Houston a second cashier's check. Mrs. Farrow subsequently attended a one-week training course in Houston to learn the mechanics of operating a Deck the Walls store. Apparently, both Mr. and Mrs. Farrow originally signed up for the training course, but only Mrs. Farrow attended.

Following the one-week training session in Houston, Mrs. Farrow returned to Georgia and, on May 13, 1986, signed an authorization to occupy certain leased premises for the Deck the Walls franchise in Georgia which designated both the Farrows as franchisees. Mrs. Farrow also signed the franchise agreement. Mr. Farrow, however, did not sign the above two documents. Upon receipt of the franchise agreement in Houston with only the signature of Mrs. Farrow, WNS, through its attorney, informed the Farrows that it had understood both Farrows were applying to be franchisees. Thereafter, Mrs. Farrow operated a Deck the Walls franchise in Georgia until April 1987, at which time WNS took possession of the Georgia store and terminated the sublease. It was at this time that WNS discovered that Mr. Farrow had been operating a competing framing store in Georgia in purported violation of the franchise agreement.

Ultimately, WNS filed suit against the Farrows in state district court in Texas alleging fraud and breach of contract on the part of the Farrows in misrepresenting their intentions to apply for and operate a Deck the Walls franchise. After the Farrows removed the instant case to federal district court in Texas, the Farrows filed a motion to dismiss the suit for lack of personal jurisdiction on the basis that they were not residents of Texas, and had not engaged in business in Texas. The federal district court subsequently granted the motion to dismiss of the Farrows. WNS now appeals.

## II. DISCUSSION

■ "A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant, provided state law confers such jurisdiction and its exercise comports with due process under the Constitution." *Interfirst Bank Clifton v. Fernandez*, 844 F.2d 279, 282 (5th Cir.1988), *opinion withdrawn in part on other grounds*, 853 F.2d 292 (1988). In Texas, since the Texas Long–Arm Statute has been interpreted to extend as far as is permitted by due process, the sole inquiry for this Court becomes whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional requirements. *Id. See Hall v. Helicopteros Nacionales de Columbia, S.A.*, 638 S.W.2d 870 (Tex.1982), *rev'd on other grounds*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

■ Due process requires that a district court seeking to exercise personal jurisdiction over a nonresident defendant must first conclude that the nonresident defendant has purposefully established "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)). In this regard, the minimum contacts of a nonresident defendant with the forum state may support either "specific" or "general" jurisdiction. *Interfirst Bank Clifton*, 844 F.2d at 283. We are concerned only with specific jurisdiction in the instant appeal as the claim asserted by WNS against the Farrows arises out of or is related to the

alleged contacts by the Farrows with Texas.[1]

Once a motion to dismiss for lack of personal jurisdiction has been presented to a district court by a nonresident defendant, the party who seeks to invoke the jurisdiction of the district court bears the burden of establishing contacts by the nonresident defendant sufficient to invoke the jurisdiction of the court. *D.J. Investments v. Metzeler Motorcycle Tire Agent Gregg,* 754 F.2d 542, 545 (5th Cir.1985). In satisfying the above burden, when the jurisdictional issue is to be decided by the court on the basis of facts contained in affidavits, a party need only present facts sufficient to constitute a prima facie case of personal jurisdiction. Addressing this issue in *D.J. Investments,* this Court stated that,

> [T]he party who bears the burden need only present a *prima facie* case for personal jurisdiction; proof by a preponderance of the evidence is not required. Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists.

*D.J. Investments,* 754 F.2d at 545–46 (emphasis in original, citations omitted).

In the instant appeal, WNS maintains that it presented to the district court a prima facie case for specific jurisdiction over the Farrows by alleging that the Farrows purposefully committed the tort of fraudulent misrepresentation, at least in part, in Texas, and by establishing that the Farrows had substantial contractual connections with Texas by virtue of their negotiations with WNS to become Deck the Walls franchisees. Without addressing whether the alleged contractual connections by the Farrows with WNS in Texas satisfy the due process requirement of "minimum contacts," we conclude that WNS has established a prima facie case of personal jurisdiction over the Farrows in Texas by alleging, with affidavit support, that the Farrows committed the intentional tort of fraud, at least in part, through their activities in Texas. In this regard, the Farrows engaged in activity that had reasonably foreseeable consequences in the State of Texas, and through which the Farrows "purposefully availed themselves of the benefits and protections of the forum state's laws." *D.J. Investments,* 754 F.2d at 547. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

Specifically, WNS alleges that the Farrows purposefully travelled to Texas to obtain proprietary information regarding a Deck the Walls franchise for the purpose of opening a competing store in Georgia by misrepresenting to WNS staff that they were interested in becoming Deck the Walls franchisees. In support of the above allegation, WNS submitted to the district court an affidavit by Joseph James Dugan, the director of store planning at WNS, wherein Mr. Dugan stated that,

> At all times during the negotiation and interview process, the training process, and the transfer of possession and operations ... until Mrs. Farrow contacted us in the latter part of May, 1986 stating otherwise, WNS acted upon the belief, based on the *Farrows' fraudulent representations at the interview in Houston and subsequent thereto,* that both the Farrows were applying in good faith for a Deck the Walls franchise which they intended to operate in compliance with the terms of the Franchise Agreement.

(Emphasis added). Further, in their original petition, WNS specifically alleged fraud on the part of the Farrows in representing to WNS in Houston that they desired to

---

1. In contrast to specific jurisdiction, "[g]eneral jurisdiction refers to a suit which does not arise from the nonresident's contacts with the forum, and is asserted only over defendants who maintain 'continuous and systematic' contacts in a particular forum." *Interfirst Bank Clifton,* 844 F.2d at 283.

become Deck the Walls franchisees. Finally, to further support their contention that the concerns of due process would be satisfied in exercising personal jurisdiction over the Farrows in Texas, WNS points to the following contacts by the Farrows with WNS in Texas: (1) the Farrows contacted WNS in Houston about possibly becoming Deck the Walls franchisees, (2) the Farrows travelled to Houston to participate in franchise negotiations with WNS resulting in the preparation of three distinct agreements between the parties, (3) Mrs. Farrow attended a week long training seminar in Houston on the mechanics of operating a Deck the Walls franchise, and (4) the Farrows partially performed the above three agreements by making payments to WNS in Texas. In rejecting the position of WNS regarding the exercise of personal jurisdiction over the Farrows, the district court reasoned that,

> If the promise was in Texas, the breach was in Georgia, the plaintiff is going to have to prove—attach any part of the tort to Texas, that at the time of making the promises, that they intended not to obey them because its a future performance case and none of the evidence suggests that at the time of making the promises that they didn't intend to follow them.

██ What belies the above position of the district court, however, is the fact that, in interpreting whether the plaintiff has established a prima facie case of personal jurisdiction, uncontroverted allegations in the complaint of a plaintiff must be taken as true, and conflicts between the facts contained in the affidavits of the parties must be resolved in favor of the plaintiff. In the instant appeal, while the Farrows dispute the fact that they did not intend to keep their promise to WNS at the time they applied to become Deck the Walls franchisees, WNS maintains otherwise, and for purposes of determining whether the district court has personal jurisdiction, the version of the facts advanced by WNS at this time must be favored. *D.J. Investments*, 754 F.2d at 545–46. Accordingly, we conclude that WNS has established a prima facie case of personal jurisdiction in

accordance with the due process requirement of "minimum contacts."

Having determined that "minimum contacts" exist to support the exercise of personal jurisdiction in Texas over the Farrows, the inquiry for this Court next becomes "whether it would be 'fair' to require [the Farrows] to defend this suit in [Texas]." *Bean Dredging Corp. v. Dredge Tech. Corp.*, 744 F.2d 1081, 1085 (5th Cir. 1984). In resolving the above inquiry,

> A court must consider the burden on the defendant, the interest of the forum state, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'

*Asahi Metal Ind. Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980). Applying the above factors to the instant appeal, we conclude that the exercise of personal jurisdiction over the Farrows would be constitutionally permissible. Most importantly, we note that Texas has a significant interest in redressing injuries that occur within its borders at the hands of nonresidents.

For the above reasons, the order of the district court dismissing the action of WNS against the Farrows for lack of personal jurisdiction is reversed and remanded for proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED.**