915 F.Supp. 845 (1996)
In re NORPLANT CONTRACEPTIVE PRODUCTS LIABILITY LITIGATION.
Barbara BUENO, Plaintiff,
v.
WYETH-AYERST LABORATORIES; American Home Products; World Population Council, Inc.; and Does 1 through 25 (Inclusively), Defendants.
MDL No. 1038. No. 1:95 CV 5077.
United States District Court, E.D. Texas, Beaumont Division.
February 7, 1996.
*846 Barbara J. Peters of Peters and Peters, Santa Monica, CA, for Plaintiff.
*847 Franklin B. Velie, of Christy & Veiner, New York City, for The Population Council.

ORDER DENYING THE POPULATION COUNCIL, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
SCHELL, Chief Judge.
This matter is before the court on The Population Council, Inc.'s[1] Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction filed on January 8, 1996. The Council filed the declarations of Sandra Arnold and Harold Nash in support of its motion. Plaintiff filed a response, including the declaration of Barbara J. Peters, on January 19, 1996. The court has determined that a hearing on this matter is unnecessary at this time. Upon consideration of the motion, response, declarations, and memoranda of law, the court is of the opinion that the motion should be DENIED.

THE FACTUAL AND LEGAL CONTEXT
On January 24, 1995, Plaintiff filed suit in California state court against various parties for injuries allegedly arising from implantation of the Norplant contraceptive system into her arm. Plaintiff has alleged causes of action against these parties for negligence, breach of express warranty, breach of implied warranty, and strict liability. This case was removed to the United States District Court for the Central District of California on March 7, 1995, and was transferred to this court under MDL 1038 for resolution of pretrial matters. The Population Council, Inc. contends that it is not subject to the jurisdiction of the courts of California and, as a result, not subject to the jurisdiction of this court under MDL 1038.[2]

THE LEGAL FRAMEWORK
"Once a motion to dismiss for lack of personal jurisdiction has been presented to a district court by a nonresident defendant, the party who seeks to invoke the jurisdiction of the district court bears the burden of establishing contacts by the non-resident defendant sufficient to invoke the jurisdiction of the court." WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir.1989) (citing D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc., 754 F.2d 542, 545 (5th Cir.1985)). To satisfy this burden, a plaintiff must make a prima facie showing of personal jurisdiction. Id. A prima facie case may be established "by alleging facts in the complaint and affidavits sufficient to establish jurisdiction over the non-resident defendants." Caldwell v. Palmetto State Sav. Bank, 811 F.2d 916, 917 (5th Cir.1987) (per curiam) (citing Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1159 (5th Cir.1983); Brown v. Flowers Indus., Inc., 688 F.2d 328, 332 (5th Cir.1982), cert. denied, 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983)). For purposes of this analysis, conflicts in the facts alleged by the litigants are resolved in the plaintiff's favor. Caldwell, 811 F.2d at 917.
Uncontroverted allegations in the complaint must be taken as true. See, e.g., D.J. Invs., 754 F.2d at 546 (citing Brown, 688 F.2d at 332); Wyatt v. Kaplan, 686 F.2d 276, 280 (5th Cir.1982). However, when the unsubstantiated allegations are controverted by affidavit or declaration, the affidavit or declaration trumps the allegation. See Travelers Indem. Co. v. Calvert Fire Ins. Co., 798 F.2d 826, 831 (5th Cir.1986), modified, 836 F.2d 850 (1988).

THE ALLEGATIONS AND DECLARATIONS
As noted above, the contents of the Plaintiff's complaint and the declarations filed by the parties will frame this analysis. Accordingly, *848 examination of the relevant portions of these documents is necessary. The Plaintiff's complaint alleges, in relevant part:
5. That Defendant WYETH-AYERST; AMERICAN HOME PRODUCTS; WORLD POPULATION COUNCIL, INC.; AND DOES 1 THROUGH 25, and each of them, were and are engaged in the researching, developing, designing, trade marking, patenting, licensing, manufacturing, compounding, formulating, synthesizing, assembling, packaging, testing, distributing, preparing, selling, recommending, displaying, advertising, promoting, endorsing, warning, providing of safety information about, instructing in the use of, providing component parts for, and labeling of certain implants, sometimes known as the Norplant System, sometimes known as Levenorgestrel [sic] implants, or similar product designation. That said Defendants, and each of them, was and is placing said products on the market to be used by California residents.
9. The injuries complained of herein were directly and legally caused and contributed to by the negligence of the Defendants, and each of them, in the following particulars, among others: (1) That each of them knew or should have known in the exercise of reasonable care that the product which they compounded, formulated, synthesized, developed, designed, trademarked[,] patented, licensed, manufactured, assembled, packaged, tested, distributed, prepared, sold, recommended, displayed, advertised, promoted, endorsed, warned about, provided safety information about, instructed in the use of, provided component parts for, and labeled were in a dangerous and defective condition since they could and would cause serious injury that could and would be mistaken for other diseases. (2) That said Defendants failed to properly design and configure said product in a manner which appropriately would control the release of Levengestrel [sic]; progesterone, and other chemicals so that the dosage released would be appropriate to each patient. (3) That said Defendants failed to properly package the hormones to properly control the release of the synthetic hormone (4) that said defendants used a biologically active encapsulant sometimes known as Silastic, a silicone product, other similarly biologically active agent [sic]; (4) [sic] That said defendants knew or had reason to know that side-effects such as intracranial hypertension, blindness, memory loss, tumors, neurological injury, and immune system injuries, among others, were likely to occur, yet failed to properly advise prospective users of this product and their doctors of these serious injuries likely to occur, among other negligent acts and omissions.
10. Further, the injuries complained of herein were directly and legally caused by the failure of the Defendants, and each of them, to properly test and detect the dangerous and defective propensities of the aforementioned Norplant System, sometimes known as Norplant implants, or similar product designation, among other negligent acts.
11. That said Defendants, and each of them, failed to adequately warn and inform of the dangerous propensities of their product. That said Defendants knew or had reason to know that those for whose use the products were supplied would not realize or fully understand the dangerous condition of these products. That said Defendants knew or had reason to know that said products would be dangerous for the use for which it was supplied. Yet these Defendants provided the subject Norplant System, sometimes known as the Norplant implant, or similar product designation, without adequate and sufficient warnings of the danger, nor did they provide appropriate instructions on the use of these products without sustaining injury.
17. That in connection with the researching, developing, designing, trade marking, patenting, licensing, manufacturing, compounding, formulating, synthesizing, assembling, packaging, testing, distributing, preparing, selling, recommending, displaying, advertising, promoting, endorsing, warning, providing of safety information about, instructing in the use of, providing component parts for, and labeling of certain implants, sometimes known as the Norplant System, sometimes known as the *849 Norplant implant, or similar product designation, and the components thereof, Defendants WYETH-AYERST LABORATORIES; AMERICAN HOME PRODUCTS; WORLD POPULATION COUNCIL, INC. and DOES 1 THROUGH 25 INCLUSIVELY, and each of them, expressly warranted that the aforementioned products were safe for use, as a timed release birth control product.
18. In truth, and in fact, this Norplant System, or similarly described product, and said components thereof, were not adequately compounded, formulated, synthesized, designed, manufactured, tested, inspected, nor suitable for use by persons using said product as a safe timed release birth control product. In truth and in fact such products were not reliable and were unsafe.
19. Further, Defendants, and each of them, expressly warranted and guaranteed that the compounding, formulating, synthesizing, researching, developing, designing, manufacturing, testing, labeling, packaging, instructing, and warnings provided for the aforementioned products were was [sic] done by their employees, agents, servants, and representatives, were adequate, suitable, and complete to insure the reliability and safety of the aforementioned products.
20. In truth and in fact, these products had not been adequately, suitably, and completely compounded, formulated, synthesized, researched, developed, designed, manufactured, tested, labeled, packaged, instructed about, nor warned about to assure the reliability and safety of the products.
24. That in connection with the sale of the Norplant System, sometimes known as sometimes known as [sic] the Norplant implant, or similar product designation, and the components thereof, Defendants, WYETH-AYERST LABORATORIES; AMERICAN HOME PRODUCTS; WORLD POPULATION COUNCIL, INC.[;] and DOES 1 THROUGH 25 INCLUSIVELY, did impliedly warrant that these products were merchantable and were fit for use by persons using these products as a form of timed release birth control device, without significant side effects.
27. That the Norplant System, sometimes known as Levenorgestrel [sic] implants, or similar product designation, were and are defective in researching, developing, designing, trade marking, patenting, licensing, manufacturing, compounding, formulating, synthesizing, assembling, packaging, testing, distributing, preparing, selling, recommending, displaying, advertising, promoting, endorsing, warning, providing of safety information about, instructing in the use of, providing component parts for, and labeling because: [sic] they: (a) were inadequately labeled, (b) lacked adequate instructions, cautions and warnings to both the patient and the health care provider[,] (c) were constructed in a manner that did not fail safe, (d) were inadequately and improperly tested, (e) proper, complete and thorough warnings, cautions and instructions to both the patient and the health care providers, (e) [sic] lacked a biologically inert capsule or container for the synthetic hormone or other chemical constituents, (f) contained components likely to cause serious bodily harm including but not necessarily limited to blindness, neurological injury, cardiovascular injury, immune system injury, among other defects.
28. That Defendants WYETH-AYERST LABORATORIES; AMERICAN HOME PRODUCTS; WORLD POPULATION COUNCIL, INC. and DOES 1 THROUGH 25 INCLUSIVELY, and each of them, placed the Norplant system or similarly designated product, and components of said products on the market knowing that these products would be used without inspection for defects. That said Defendants knew that the Plaintiff would and did rely upon the adequacy of their testing and inspection for defects.
29. That Plaintiff was injured while using the aforementioned products in a manner which was foreseeable, intended, and in fact anticipated by the Defendants herein.
Pl.'s Compl. at 1-9 (paragraphs as numbered in the excerpt).
*850 In support of its Rule 12(b)(2) motion, the Council filed the declarations of Sandra Arnold, a vice president of the Council. Ms. Arnold's declaration states, in relevant part:
2. The Council is a New York not-for-profit corporation, with its principal place of business in New York and its primary office located at One Dag Hammarskjold Plaza, New York, New York. The Council also has an office at 1230 York Avenue, New York, New York as well as certain additional offices around the world. The Council maintains no offices, laboratories, agents, affiliates, subsidiaries, telephone listings, real estate, bank accounts or P.O. Boxes in California. The Council does not have any employees in California, is not registered to do business there and neither distributes nor sells products in California. The Council does not maintain an agent for the service of process in California, nor is it required to do so. The Council conducts no advertising, marketing or other sales or promotional activities in California nor does it manufacture, sell or deliver goods into the California market.
3. The Council is a not-for-profit research organization founded in 1952. Its philanthropic purposes include improving reproductive health and achieving a balance between population and resources in the world. In connection with those goals, one of the Council's activities is developing and licensing contraceptive devices and products. In furtherance of that purpose, the Council developed NORPLANT® ("Norplant") for use throughout the world.
4. All of the Council's records related to Norplant are located in New York. All of the final decisions regarding the development, design and testing of Norplant were made in New York. Thus, the vast majority of the relevant documents and witnesses regarding the Council's relation to and role in the Norplant system are located in New York.
Arnold Decl. ¶¶ 2-4. The Council also filed the declaration of Harold Nash, a senior scientist with the Council. Mr. Nash's declaration provides, in pertinent part:
2. Norplant is a long-term reversible contraceptive device consisting of six thin, flexible capsules containing the synthetic hormone levonorgestrel that are placed under the skin of a woman. Norplant is highly effective in preventing contraception for approximately 5 years. After commissioning testing, the Council obtained FDA approval of Norplant for sale and use in the United States. Norplant has also been approved for distribution and sale in numerous other countries.
3. The Council's purpose does not encompass the manufacture, distribution or sale of the products that it develops. As a result, the Council licensed rights to Norplant to American Home Products and its subsidiaries and affiliates, including Wyeth-Ayerst Laboratories Co. and Wyeth Laboratories, Inc. (collectively, the "Wyeth Defendants"). A third company is licensed to manufacture the Norplant system in Finland. The Wyeth Defendants import Norplant into the United States and sell it, pursuant to doctors' prescriptions, to women who request it around the country. As the Wyeth Defendants are parties to this litigation, plaintiffs may obtain complete relief from them for any injuries that they may have suffered, even if the cases against the Council are dismissed.
4. All of the Council's records related to Norplant are located in New York. All of the final decisions regarding the development, design and testing of Norplant were made in New York. Thus, the vast majority of the relevant documents and witnesses regarding the Council's relation to and role in the Norplant system are located in New York.
5. In connection with obtaining the FDA's approval to have Norplant sold in the United States, the Council was required to conduct various studies of Norplant. The Council conducted five such studies, each consisting of one or more groups of clinical trials. In connection with those studies, the Council contracted with various doctors to have them conduct the clinical trials and to have those doctors report their findings to the Council for evaluation and synthesis. None of the doctors who performed the clinical studies *851 were employees of the Council. They were all independent contractors. Those doctors conducted clinical trials of Norplant under contracts specifically directed to that task. In addition, some were also hired as part time consultants to the Council with respect to a variety of contraceptive methods the Council was considering.
6. Some of the clinical trials of Norplant were conducted by Dr. Daniel R. Mishell, Jr., who is associated with the University of Southern California medical school. Dr. Mishell has entered into a yearly consulting arrangement with the Council for several years and also signed a contract specifically related to the Norplant clinical trials. Pursuant to his consulting arrangement, he was expected to spend approximately 100 working days each year on the Council's projects. Both his consulting agreement and the contract related to the trials of Norplant are governed by New York law. Dr. Mishell was selected based entirely on his research experience and his reputation in the medical field. Dr. Mishell's California residence was not related to the reasons why he was selected as a consultant or to conduct Norplant trials.
7. Dr. Philip Darney, a doctor associated with the University of CaliforniaSan Francisco, ran one of the several clinics included in the clinical trial of Norplant identified as study number 21/25. Dr. Darney performed those trials pursuant to a specific contract he executed with the Council related to the Norplant trials. That contract is governed by New York law. Much the same as with Dr. Mishell, Dr. Darney's status as a California resident had nothing to do with his selection to conduct the Norplant trials.
8. Additional clinical trials for Norplant were conducted by doctors located around the world. They also were independent contractors, and, other than certain clinics which were chosen in part to allow assessment of Norplant performance and acceptance in developing countries, their residence had nothing to do with their selection.
9. The Council's decisions about the amount of testing, quality of the resulting data, and whether further testing was necessary were all made in New York. The International Committee for Contraception Research ("ICCR"), which is supported by the Council, also received and evaluated the results of the studies. Dr. Mishell was a member of the ICCR. The ICCR met numerous times in various places around the world when discussing and evaluating the test results. Two of those meetings was [sic] held in California, in the early 1980s.
10. In connection with the clinical trials of Norplant, employees of the Council visited the various testing locations, including the two in California, to evaluate the reliability and accuracy of the testing and record keeping. Those visits were conducted approximately twice a year beginning in the early 1980s. Like the doctors running those centers, the selection of a specific center had nothing to do with its location, except for centers selected in part because they were located in developing countries.
Nash Decl. ¶¶ 2-10.
Finally, in opposition to the Council's 12(b)(2) motion, Plaintiff filed the declaration of Barbara J. Peters, which states in its entirety:
1. I have personally visited the University of California at Los Angeles (UCLA) Medical Library.
2. I photocopied the attached article from Contraception, a periodical in the medical library available to the doctors at UCLA[.]
Peters Decl. ¶¶ 1-2.
The task left for the court is to compare the allegations in Plaintiff's complaint with the declarations filed by the Council. Any allegations that are not controverted by the Council's declarations must be taken as true. D.J. Invs., Inc., 754 F.2d at 546. The declarations filed by the movant with its motion do not expressly contradict all of the allegations in the complaint regarding the Council's involvement with Norplant. Therefore, it is the duty of this court to determine whether the remaining uncontroverted allegations establish a prima facie showing of personal jurisdiction.
*852 In her complaint, Plaintiff makes numerous allegations regarding the conduct of the Defendants named in this action. Rather than systematically denying the complaint's allegations and outlining exactly what the Council did not do with regard to the Norplant contraceptive system, the Council's declarations focus primarily on the things that the Council did do in relation to Norplant. Interestingly, the closest thing to a denial in the Council's declarations is the ambiguous statement that "[t]he Council's purpose does not encompass the manufacture, distribution or sale of the products that it develops." Nash Decl. ¶ 3. As such, the declarations fail to controvert the vast majority of Plaintiff's allegations.

THE JURISDICTIONAL INQUIRY
Because this is a diversity suit originally filed in California, this court has jurisdiction over nonresident defendants to the same extent that a California state court would have such jurisdiction. Wilson v. Belin, 20 F.3d 644, 646 (5th Cir.), cert. denied, ___ U.S. ____, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994). Because the California long-arm statute[3] extends to the limits of federal due process,[4] this court must determine whether requiring the movant to defend this suit in California will impinge on its interests that are protected by the Due Process Clause. Id. at 647.
In terms of personal jurisdiction, in order to satisfy the Due Process Clause, two prerequisites must first be met. First, a nonresident defendant must have purposefully availed itself of the forum by establishing "minimum contacts" with that forum state. Id. (citing International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); Bullion v. Gillespie, 895 F.2d 213, 216 (5th Cir.1990)). Then, if the first hurdle is cleared, the exercise of jurisdiction over the nonresident defendant must not offend "traditional notions of fair play and substantial justice." Id. (quoting Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (citations omitted)).
The "minimum contacts" prong may be further subdivided into contacts giving rise to "specific" jurisdiction and contacts giving rise to "general" jurisdiction. Id. For a court to exercise "general" jurisdiction over a defendant, the defendant must have contacts with the forum state which are continuous, systematic, and substantial.[5]Id. at 649 (citing Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780 n. 11, 104 S.Ct. 1473, 1481 n. 11, 79 L.Ed.2d 790 (1984)). Based on a review of the complaint and declarations on file in this case, it appears that the Council did not maintain continuous, systematic, and substantial contacts with California. On this record, the California courts do not possess general jurisdiction over The Population Council, Inc.
For a court to exercise "specific" jurisdiction over a defendant, the cause of action must arise out of the defendant's contacts with the forum. Dalton v. R & W Marine, Inc., 897 F.2d 1359, 1361 (5th Cir.1990). In this case, an examination of a portion of Plaintiff's allegations will suffice to decide this motion. Specifically, Plaintiff's allegations regarding the Council's testing of Norplant in California, coupled with the admissions contained in the Council's declarations, are sufficient to establish the prima facie showing of personal jurisdiction that is necessary to defeat this Rule 12(b)(2) motion.
In her complaint, Plaintiff alleges that her injuries were caused by, among a myriad of other things, the Council's improper testing of the Norplant contraceptive system. See Pl.'s Compl. ¶¶ 5, 9, 10, 18, 20, 27. The Council, through the declaration of Mr. Nash, specifically admits that some of the clinical testing of the Norplant contraceptive *853 system took place in California, and that employees of the Council routinely visited the testing sites to monitor the progress. See Nash Decl. ¶¶ 2, 5, 6, 7, 10. As such, the injuries alleged in Plaintiff's complaint arose out of the Council's contacts with the California forum. "Even a single, substantial act directed toward the forum can support specific jurisdiction." Dalton, 897 F.2d at 1361 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).[6]
Because this factual situation features minimum contacts sufficient to subject the Council to specific jurisdiction in California state courts, this court next must determine if the second prong of the analysis, whether the exercise of jurisdiction offends "traditional notions of fair play and substantial justice," is satisfied. To determine whether requiring a defendant to defend a suit in a distant forum is "fair," a court must consider several factors:
(1) the burden upon the nonresident defendant;
(2) the interests of the forum state;
(3) the plaintiff's interest in securing relief;
(4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and
(5) the shared interest of the several states in furthering fundamental substantive social policies.
Wilson, 20 F.3d at 647 n. 3 (citations and quotations omitted).

1. The Burden Upon the Nonresident Defendant

Defending this case in California will not place an unreasonable burden on the nonresident defendant, the Council, given that the Council's employees have traveled to California in connection with the testing that forms the basis for a portion of this lawsuit. See Nash Decl. ¶ 10; Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 421 (5th Cir.1993).[7]

2. The Interests of the Forum State

As the forum state, California has a strong interest in the resolution of this claim in California. This case involves injuries allegedly suffered by a California resident as a result of the Council's testing of Norplant. See Def.'s Notice of Removal ¶ 5(a); Pl.'s Compl. ¶¶ 5, 9, 10, 18, 20, 27. A significant amount of that testing took place in California. See Nash Decl. ¶¶ 4, 5. As such, California has a compelling interest in adjudicating this claim in California courts. See Ruston Gas, 9 F.3d at 421.

3. The Plaintiff's Interest in Securing Relief

In this case, the Plaintiff has a strong interest in securing convenient and effective relief. Plaintiff's claims against the movant are the same as her claims against all parties to this lawsuit, and the retention of the Council in this action will bring all parties together for efficient pretrial disposition under MDL 1038 and for a subsequent trial on the merits. The California forum will assemble all of the parties for a final resolution of these claims. The Fifth Circuit has held that an identical interest comported with the fair play requirement of the Due Process Clause. Id.

4. The Interstate Judicial System's Interest in Efficient Resolution of Controversies

From an efficiency standpoint, it is a great advantage to the judicial system itself to *854 have the claim against the movant litigated along with identical claims against the other defendants to this lawsuit. Removing the Council from this lawsuit most likely would splinter this claim into multiple lawsuits pending in courts across the country. Retention of the Council will prevent this multiplicity of lawsuits and facilitate the operation of MDL 1038.

5. The Shared Interest of the Several States in Furthering Fundamental Substantive Social Policies

California, as well as every other state in the nation, has as interest in having responsible parties appear to answer for their actions in the courts of the states in which the activities took place.
For all of the above reasons, this court's exercise of personal jurisdiction over the movant would not offend traditional notions of fair play and substantial justice. Requiring the Council to defend this suit in California would be neither unfair nor unreasonable.

CONCLUSION
At this early stage in this litigation, Plaintiff has established a prima facie showing of personal jurisdiction over the Council. It is, therefore, ORDERED that The Population Council, Inc.'s Motion to Dismiss Pursuant to Rule 12(b)(2) is hereby DENIED. A more detailed inquiry into the existence of personal jurisdiction over The Population Council, Inc. certainly will take place at the trial of this case. See 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1351 (1994) (and cases cited therein); DAVID HITTNER, FEDERAL CIVIL PROCEDURE BEFORE TRIAL §§ 9:111-:121 (5th Cir.Ed.1995) (and cases cited therein).
NOTES
[1] Plaintiff mistakenly refers to The Population Council, Inc. as "The World Population Council, Inc." in its original California complaint.
[2] For purposes of this motion, the court will analyze personal jurisdiction pursuant to the state law of California, the original forum selected by Plaintiff. However, as to analysis and interpretation of the federal Rule 12(b)(2) motion, the court is bound by the precedent of the United States Court of Appeals for the Fifth Circuit, the transferee forum. See In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1172 (D.C.Cir.1987), aff'd, 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989); Doe v. Wyeth-Ayerst Laboratories, 878 F.Supp. 972, 974-75 (E.D.Tex.1995).
[3] CAL.CIV.PROC.CODE § 410.10.
[4] See Congoleum Corp. v. DLW Aktiengesellschaft, 729 F.2d 1240, 1241 (9th Cir.1984); Sousa v. Ocean Sunflower Shipping Co., Ltd., 608 F.Supp. 1309, 1311 (D.C.Cal.1984).
[5] See generally, Debra Windsor, How Specific Can We Make General Jurisdiction: The Search for a Refined Set of Standards, 44 BAYLOR L.REV. 593 (1992).
[6] The Council maintains that the activities of the physicians hired to conduct the tests are not attributable to the Council for purposes of determining its contacts with California. In support of this contention, the Council cites Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1076 (10th Cir.1995) and Benjamin v. Western Boat Building Corp., 472 F.2d 723, 730-31 (5th Cir.), cert. denied, 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973). The court finds these cases to be inapposite. In Far West, the activity of the consultant in question was negligible. In this case, however, the testing conducted by the physicians conceivably could constitute the essence of this lawsuit. Likewise, Benjamin is distinguishable because unlike the independent contractor in Benjamin, the Council regularly sent its employees into California to monitor the testing taking place there. See Benjamin, 472 F.2d at 731.
[7] The court notes that the burden should be ameliorated significantly through the consolidation of all federal Norplant pretrial matters in MDL 1038.