UNITED STATES of America ex rel. Dianne B. GILES, Plaintiff,

v.

Lyle SARDIE, an individual, Evan Martinez, an individual; Willie Dixon, an individual; Gregory Dixon, an individual; Wallace Kent, an individual; Sam Okike, an individual; David Lee Weems, an individual; ABC Demolition, a Business Entity of Unknown Legal Status; ACE Industries, a Business Entity of Unknown Legal Status; Cal West Demo, a Business Entity of Unknown Legal Status; Avex, a Business Entity of Unknown Legal Status; Evan Construction, a Business Entity of Unknown Legal Status; West Construction, a Business Entity of Unknown Legal Status; Turner Industries, a Business Entity of Unknown Legal Status; Gideon Enterprises, a Business Entity of Unknown Legal Status; ECA Unity Co, a Business Entity of Unknown Legal Status; Pacific Industries, a Business Entity of Unknown Legal Status; Doheny Construction, a Business Entity of Unknown Legal Status; Forbes Construction, a Business Entity of Unknown Legal Status; Kent & Sons, a Business Entity of Unknown Legal Status; Fynok American, a Business Entity of Unknown Legal Status; All in One Demolition, a Business Entity of Unknown Legal Status; International Industries, a Business Entity of Unknown Legal Status; Trump Construction Co., a Business Entity of Unknown Legal Status; Willie Dixon Truck, a Business Entity of Unknown Legal Status; William Keith Dixon; James E

Pratt; DR Schmidt; John Doran; Michael Mitchell; Wilkes Bradley; Israel Cortezx; Paul Medina; Jay Shackelford; Pablo Reyes; Daniel Dulac; Santiago Perez; City of Los Angeles, a municipal corporation, and the following business entities of unknown legal status: AMI Industries; Action Industries; McMasters Construction; MRS Demo; DMD Construction; MSRV; LKE's Demolition; P & K Enterprises; Forbes Construction; State Construction; Excel Construction; D & R Construction; DELS Construction; Sophie Construction; Dani & Co; Douglas Construction & Demolition; Craig & Armand's Wrecking; Carmen Construction Co.; Forty Acres & Contract; Bubba & Sons; McDuffies; Lanzie & Associates; City Training Institute; O'Doran & Co.; Caroll & Co.; Public Works Demolition; Cousin Jack; Contract Management; Greystone Company; Universal Management; Carnegie Enterprises, Peck Construction; Ocean Construction; West International; Eagle Construction; Zion Co.; Hughes Co.; Rockefeller Industries; Economy Building; Low Budget Construction; DW Construction; Alpro/DW Construction; Pratt's Wrecking; Tiptoe; MCM; LRG Construction; RG Construction; SRM Construction; RGG; GLTG; MDD Construction; DD Construction; LRGG; Doran Engineering; Dixon Demo & Trucking; General Excavation; RG Excavation; LRG Excavation; Wilco Equipment; IDC Builders; Leeco Construction; ADR; RPM; LA City Construction; New Age Demolition; PRS Demolition; Rozanne's Demolition; MS Demoli-

tion; Indian Demolition; BTJ; West Coast Land Clearing; Daniel Dulac; MM & R Services; Enviroprop; Santiago Perez; Perez Construction; Gomez & Sons and DOES, 1 through 20, Defendants.

Evan Martinez, Third–Party Plaintiff,

v.

Fleming Construction & Equipment; Terry Fleming; Frank Bresher; and Tony Catone, Third–Party Defendants.

Evan Martinez, Cross–Claimant,

v.

Lyle Sardie; and Michael Mitchell, Cross–Defendants.

No. 96–2002 LGB(RCX).

United States District Court, C.D. California.

July 27, 2000.

ORDER DENYING (1) THE CITY OF LOS ANGELES'S MOTION TO DISMISS [63–1]; (2) THE DIXON DEFENDANTS' MOTION TO DISMISS [64–1]; (3) MICHAEL MITCHELL'S MOTION TO DISMISS [103–1]; AND (4) SARDIE ET AL.'S MOTION TO DISMISS [124–1].

BAIRD, District Judge.

## I. INTRODUCTION

This matter comes before the Court upon defendants' motions to dismiss the First Amended Complaint of the qui tam action brought by Relator Diane Giles. The Court has subject matter jurisdiction over the action and the complaint sufficiently raises a claim upon which relief may be granted. Therefore, the Court denies the motions.

## II. FACTUAL BACKGROUND

On January 17, 1994, an earthquake centered in Northridge, California, struck the Los Angeles metropolitan area. The City of Los Angeles ("City") established a city-sponsored demolition and debris removal program under the leadership of the Bureau of Engineering of the Department of Public Works by January 25, 1994. (See JN Ex. 16.) City then declared a state of local emergency and the City Council suspended provisions of City Charter section 386 in order to enter into demolition and debris removal contracts immediately. (See JN Ex. 9 at 64.) City Council also

implemented a local preference policy in awarding recovery contracts to help resuscitate the local economy. (*See* JN Ex. 17; *see also* JN Ex. 23.)

On February 22, 1994, City created the Earthquake Recovery Division (ERD) within the Bureau of Engineering. The following day, City allocated $75 million in advanced funds from the Federal Emergency Management Agency (FEMA). (*See* JN Ex. 19–20, 22.)

On February 25, 1994, the Public Works Committee Report ("Report") to City Council stated in one sentence:

> [a]t the Committee meeting there were concerns raised regarding allegations by whistle blowers that some of the contractor [sic] were not diligent in utilizing personnel and equipment on the debris removal activities, and that there were even instances of 'padding' of the payrolls and equipment usage.

(JN Ex. 21 at 136.) By March 3, 1994, a total of 14,987 requests for debris removal had been logged, and approximately 100,-000 tons of debris had already been removed by debris removal contractors.[1] (*See* JN Ex. 24 at 154.)

Relator Diane Giles was an auditor with City from March of 1994 through September of 1994. As an employee of Accountants Overload, Giles was hired by City to review invoices and supporting documentation submitted by debris removal contractors. Giles does not allege that she was aware of the contents of the Report noted above. During her review of the documents submitted by the contractors along with their invoices, Giles discovered that several contractors had overbilled and mischarged for their services. (*See* First Amended Complaint ¶¶ 35–40; ¶¶ 49–54.)

Upon discovering the overbilling and mischarging practices, Giles informed her superiors, Andres Santamaria, Division Engineer and Head of the ERD, Marsha Diadola, Management Analysis in charge of ERD's Accounting Department, and Michael Simpson, an Engineer and Team Leader at ERD. (*See id.* at ¶¶ 43–45; ¶¶ 49–54.) Her reports were often ignored. (*See id.* at ¶ 47.)

On September 16, 1994, after Giles had reported mischarges and overbilling by defendant Lyle Sardie, a debris removal contractor, she was summoned to a meeting with Sardie, Santamaria, Diadola, Simpson and a member of the Contract Discipline Department. Defendant Sardie alleged that if he was exposed he would expose other contractors who also overbilled and mischarged for their services. Following the meeting, Giles was terminated by Santamaria and Diadola. Defendant Sardie was reimbursed for his allegedly inflated invoices. (*See id.* at ¶ 54.)

In July of 1995, Giles first disclosed her allegations to Assistant United States Attorney Howard Daniels. In August, Giles disclosed the material to Assistant United States Attorney David Ringnell which now forms the basis of her complaint. On March 20, 1996, Giles' attorney filed her original complaint in this action under seal and served on the United States the written disclosure required by 31 U.S.C. § 3730(b)(2). Giles' attorney filed the First Amended Complaint on October 23, 1998, naming City as a defendant. On March 11, 1999, the United States filed a notice of election to decline intervention pursuant to 31 U.S.C. § 3730(b)(4)(B).

---

1. By July of 1996, FEMA had declared $41.8 million of City's costs ineligible for reimbursement. (*See* JN Ex. 33 at 248.) In June of 1999, an independent audit of the Office of Emergency Services of the State of California notified City of its findings regarding FEMA's initial $75 million advance, noting that City owed FEMA $2.6 million in interest. (*See* JN Ex. 34.)

On January 5, 2000, City filed a motion to dismiss the first amended complaint. On January 12, 2000, Defendants William Keith Dixon, Gregory Vincent Dixon and Willie Dixon ("Dixon Defendants") also filed a motion to dismiss the first amended complaint. On January 31, 2000, the United States filed an amicus curiae brief in opposition to City's motion to dismiss. On February 2, 2000, Giles filed her opposition to both City's and the Dixon Defendants' motions to dismiss. City then filed a reply to the relator's and amicus' opposition briefs on February 8, 2000. Giles and the United States then filed objections to City's reply on February 10 and 11, 2000, respectively. On March 16, 2000, Defendant Mitchell filed a motion to dismiss the first amended complaint. The Court granted Giles' ex parte motion for leave to file an opposition brief to Mitchell's motion to dismiss on April 14, 2000. On May 8, 2000, Defendant Sardie filed a motion to dismiss. That motion has not yet been opposed by Giles. However, because Sardie's motion mirrors City's and the Dixon's motions, the Court will address it here and incorporate Giles' opposition.

## III. LEGAL STANDARD

### A. Failure to State a Claim Upon Which Relief Can be Granted

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when the complaint fails to state a claim upon which relief can be granted. *See Fed.R.Civ.P.* 12(b)(6). A complaint fails to state a claim if it does not allege facts necessary to support a cognizable legal claim. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984).

In reviewing a Rule 12(b)(6) motion, the court must presume the truth of the factual allegations in the complaint and draw all reasonable inferences in favor of the non-

moving party. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995); *see also Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). Dismissal under Rule 12(b)(6) is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (dismissal appropriate only where "plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); *see also Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1152 (9th Cir.1989). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the plaintiff's claim. *See Usher*, 828 F.2d at 561.

### B. Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) states that a district court may dismiss a complaint for "lack of jurisdiction over the subject matter." *Fed.R.Civ.P.* 12(b)(1). In fact, unless the court has subject matter jurisdiction, the complaint must be dismissed. *See Krouse v. United States Gov't Treas. Dept. Int. Rev. Service*, 380 F.Supp. 219, 221 (C.D.Cal.1974). Dismissal of a complaint for lack of subject matter jurisdiction is *without prejudice* and the plaintiff may still seek relief in another forum. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 n. 4 (2d Cir.1994).

When a defendant's motion to dismiss is made as its initial response, plaintiff need only make a prima facie showing that subject matter jurisdiction exists. *See Data Disc. Inc. v. Sys. Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977). In this context, a "prima facie" showing means that plaintiff has produced admissible evidence which, if believed, would be suffi-

cient to establish the existence of jurisdiction. *See WNS, Inc. v. Farrow*, 884 F.2d 200, 203–04 (5th Cir.1989). All factual disputes, should be resolved in favor of the plaintiff. *See EDIAS Software Int'l v. BASIS Int'l*, 947 F.Supp. 413, 417 (D.Ariz. 1996) (citing *Karsten Manufacturing Corp. v. United States Golf Ass'n*, 728 F.Supp. 1429, 1432 (D.Ariz.1990)).

### C. Judicial Notice

 Documents outside of the complaint are not considered in a Rule 12(b)(6) motion unless the complaint specifically refers and incorporates them. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994). Moreover, the court may consider a matter that is properly the subject of judicial notice while considering a motion to dismiss. *See MGIC Idem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986).

In the present case, City requests the Court to take judicial notice of 36 exhibits filed on January 5, 2000,[2] Federal Rule of Evidence 201(b)(2) allows the Court to take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." No objections to the request have been filed. Therefore, the Court takes judicial notice of Exhibit Nos. 1–36 contained in City's filing of January 5, 2000.

### IV. ANALYSIS

### A. Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted

City alleges that it is immune from liability under the False Claims Act (FCA).

It claims that as a municipality, it is entitled to immunity from punitive damages awards. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 261, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Furthermore, City states that Congress may only abrogate that immunity by a clear statement to do so. *See id.* at 263, 101 S.Ct. 2748. Giles argues on the other hand that City is a proper defendant in the action.

### 1. Nature of damages and municipal liability under the FCA

 City argues that it is immune from suit under the FCA because the treble damages and civil penalty provisions contained in section 3729(a) are punitive in nature. *See Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 784, 120 S.Ct. 1858, 1869, 146 L.Ed.2d 836 (2000). It asserts that municipalities are immune from punitive damages absent a statement by Congress to the contrary. *See Newport*, 453 U.S. at 259–260, 101 S.Ct. 2748, City also argues that the 1986 amendments to the FCA amplified the punitive nature of the statute by establishing the treble damages provision and increasing the civil penalty. Giles argues in opposition that the Supreme Court's treatment of the issue in *Stevens* falls short of establishing the principle that municipalities are immune from liability under section 3729(a) of the FCA.

The Court is not persuaded by the argument that *Stevens* stands for the proposition that municipalities are immune from the liability provision of section 3729(a) of the FCA. A brief examination of the Supreme Court's reasoning in *Stevens* will

**2.** The exhibits each fit into one of the following categories: (1) Code of Federal Regulations, (2) Federal Register Publication, (3) Administrative Code of City, (4) City Council Motions, (5) Budget and Finance Report to City Council, (6) Public Works Committee Report to City Council, (7) Bureau of Engineering After–Action Report, (8) City Ad Hoc Committee on Earthquake Recovery Report, (9) City Council Communication, (10) Correspondence to City from Governor's Office of Emergency Services, (11) Certifications of Authenticity.

sufficiently support the Court's interpretation.

In the October Term of 1999, the Supreme Court held in *Stevens* that "a private individual has standing to bring suit in federal court on behalf of the United States under [the FCA], but that [the FCA] does not subject a State ... to liability in such actions." *Stevens*, at 787, 120 S.Ct. 1858. The Supreme Court grounded its analysis on the interpretive presumption that the word "person" in section 3729(a) does not include the sovereign (i.e., the state). *See id.* at 778–79, 120 S.Ct. 1858. The Court noted further that the presumption was "particularly applicable where it is claimed that Congress has subjected the States to liability to which they had not been subject before." *Id.* (*quoting Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). Finally, the Court stated that the presumption may be "disregarded only upon some affirmative showing of statutory intent to the contrary." *Id.* (*citing International Primate Protection League v. Administrators of Tulane Ed. Fund*, 500 U.S. 72, 83, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991)). The Court then went on to address the historical context of the passage of the FCA and subsequent amendments, concluding that none of the circumstances suggested a "broadening of the term 'person' to include States." *Id.* at 782, 120 S.Ct. 1858.

The Court then noted three other features of the current "statutory scheme" which further supported the conclusion that states are not subject to liability under the FCA. *Id.* at 784, 120 S.Ct. 1858. First, the Court noted that section 3733 which addresses the issue of civil investigative demands, defines "person" "[f]or the purposes of this section" to include states. 31 U.S.C. § 3733(1)(4). The Court concluded that the absence of a similar definition in section 3729 suggested that states are

not to be construed as persons for the purposes of that section. *See Stevens*, at 784, 120 S.Ct. 1858. Second, the Court stated that the FCA imposes damages which are "essentially punitive in nature" which is inconsistent with the presumption in *Newport* that punitive damages are not properly imposed upon governmental entities. *Id.* Finally, the Court also noted that the program Fraud Civil Remedies Act of 1986 (PFCRA), a statute similar to the FCA, contained a definition of "person" that does not include states, rendering it doubtful that Congress would subject states to the treble damages provision of the FCA, but not the "relatively smaller damages" provided for under the PFCRA. *Id.*

It appears to the Court that the *Stevens* decision only tangentially addresses the "punitive nature of damages" question at issue in the present case. Furthermore, the presumption which forms the basis of the Supreme Court's analysis in *Stevens* has no parallel in the instant inquiry. If anything, the presumption most closely applicable here is that municipal corporations are properly treated as private corporations for the purposes of construing the term "persons" in federal statutes. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 685–88, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Monell*, the Supreme Court reasoned that municipalities are liable as "persons" under section 1983, in part, because "municipalities through their official acts could, equally with natural persons, create the harms intended to be remedied by [section 1983]." *Id.*

The Court does not interpret the Supreme Court's discussion of the punitive nature of damages provision in *Stevens* as being central to the holding in that case. Therefore, in the absence of an interpretive presumption against inclusion of mu-

nicipalities in the term "persons" or a holding addressing the liability of a municipality under the FCA which is founded squarely on the punitive nature of the damages issue, the Court concludes that City is not immune from the application of liability under the FCA.[3] Thus, City's claim of immunity in this case is invalid.[4]

### B. Motions to Dismiss for Lack of Subject Matter Jurisdiction

City, the Dixon Defendants and Mitchell move the Court to dismiss the present qui tam suit on the grounds that the Court lacks subject matter jurisdiction to hear the case. Defendants assert that application of section 3730(e)(4) of the FCA bars the action because the Report by the Public Works Committee constituted a "public disclosure" and that Giles' allegations are based on information contained in the Report.

Giles argues, however, that the Court does have subject matter jurisdiction over the case because (1) the Report was not a "public disclosure" under the FCA, (2) even if the Report did constitute a public disclosure, Giles' complaint is not based on the information contained in the Report, and (3) Giles is the original source of the material disclosed to the United States that forms the basis of the complaint.

### 1. Public disclosure

■ Section 3730(e)(4)(A) of the FCA provides:

No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media.

31 U.S.C. § 3730(e)(4)(A). The prevailing view among federal courts is that the list of public reports, meetings and trials in section 3730(e)(4)(A) is exhaustive. *See United States ex rel. Dunleavy v. County of Delaware*, 123 F.3d 734, 744 (3rd Cir. 1997); *United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1499–1500 (11th Cir.1991); *United States ex rel. Fine v. Advanced Sciences, Inc.*, 99 F.3d 1000, 1004 (10th Cir.1996); *United States ex rel. Doe v. John Doe Corp.*, 960 F.2d 318, 323 (2d Cir.1992); *United States ex rel. LeBlanc v. Raytheon Co., Inc.*, 913 F.2d 17, 20 (1st Cir.1990). As such, the only possible category in which the Public Works Committee Report would fit would be an "administrative" report.

The Report cannot be accurately construed as a public disclosure under section 3730(e)(4)(A) for several reasons. First, construing any factual disputes in the light most favorable to Giles as the non-moving party, the Report is most accurately described as a legislative report. Article III, Section 21 of City Charter specifies that City Council and the Public Works Committee are legislative bodies.[5] It is not alleged that the City Council or Public

---

**3.** City's reliance on *Genty v. Resolution Trust Corp.*, 937 F.2d 899 (3rd Cir.1991), is misplaced because the Third Circuit distinguished between RICO's provision for treble damages, which was at issue in that case, and the FCA's damages provision. *See id.* at 912 n. 7. Similarly, the Court does not find City's arguments based upon *United States ex rel. Graber v. City of New York*, 8 F.Supp.2d 343 (S.D.N.Y.1998), to be persuasive.

**4.** The Court concludes that the issue of the "plain statement" rule is resolved by the fact that municipalities are presumed to be included in the term "person" pursuant to *Monell*.

**5.** "All legislative power of the City except as herein otherwise provided is vested in the [City] council." Los Angeles City Charter, Art. III, § 21. Committees created by legislative bodies are themselves legislative bodies. *See* Cal.Govt.Code § 54952(b).

Works Committee are administrative bodies under the executive office of City.

Secondly, the cases cited in support of defendants' argument of public disclosure each involve circumstances inapplicable to the present case. In *United States ex rel. Biddle v. Board of Trustees of the Leland Stanford, Jr. Univ.*, 161 F.3d 533 (9th Cir.1998), Stanford University's alleged fraud was disclosed through governmental investigations and media reports. *See id.* at 535–36. In *United States ex rel. Devlin v. State of California*, 84 F.3d 358 (9th Cir.1996), the alleged fraud committed by the Mariposa Social Services Department was disclosed in a story published in the local newspaper. In the present case, the first disclosures of overbilling and mischarging made to the United States Attorney were made by Giles. These disclosures form the basis of the First Amended Complaint.

Finally, City also argues that pursuant to *A–1 Ambulance Service, Inc., v. State of California*, 202 F.3d 1238 (9th Cir.2000), the Report was part of an administrative hearing, and, thus, was publicly disclosed at the meeting of City Council. *See id.* at 1243–44. The facts of the present case are clearly distinguishable from those in *A–1 Ambulance*. In *A–1 Ambulance*, all of the material factual allegations that formed the basis of the complaint were publicly disclosed. They were, in the words of the Ninth Circuit, the subject of "extensive public agency proceedings." *Id.* at 1243. Furthermore, the Ninth Circuit recognized the "inherently public nature of the bidding process" for ambulance services as evidence of the nature of the public disclosure. *Id.* at 1244.

In the present case, the allegations that form the basis of the First Amended Complaint were not disclosed to the public in the Report. The Report stated, in one meager sentence at the end of the summary, vague suggestions of overbilling without implicating specific contractors or government offices. Furthermore, the Report was presented to City Council five weeks after the earthquake struck and less than a month after many contracts were awarded. Such an accelerated process was not conducive to the "extensive public agency proceedings" and inherent public nature of awarding contracts present in *A–1 Ambulance*.

Therefore, construing any factual disputes in favor of Giles, the Court finds that the allegations that form the basis of Giles' complaint were not publicly disclosed in such a way as to trigger the application of section 3730(e)(4)(A).

**2. Source of Giles' allegations**

■ Defendants further argue that because the allegations of fraud in the debris removal process had been in the public domain and because Giles was not the source of the allegations contained in the Report, the Court lacks subject matter jurisdiction over the case.

Giles argues in response that the allegations that form the basis of her complaint were not based on the report, but rather on her own work as an auditor of the debris removal contractors' invoices and supporting documentation. Even assuming that the allegations had been publicly disclosed, which the Court has ruled they were not, Giles' allegations are distinguishable from the material contained in the Report.

The jurisdictional bar contained in section 3730(e)(4) may be triggered when allegations contained in the relator's complaint are "based on" the public disclosure. *Biddle*, 161 F.3d at 540. In addressing the issue, the Ninth Circuit held that merely repeating allegations contained in a public disclosure was insufficient to support a claim under the FCA. *See id.*

Addressing the issue of whether a complaint's allegations merely repeat publicly disclosed allegations, the Ninth Circuit has ruled that no public disclosure exists where certain wrongdoers are identified and not others. *See United States ex rel. Aflatooni v. Kitsap Physicians Servs.*, 163 F.3d 516, 522–23 (9th Cir.1999); *see also United States ex rel. Lindenthal v. General Dynamics Corp.*, 61 F.3d 1402, 1409–10 (9th Cir.1995) *cert. denied* 517 U.S. 1104, 116 S.Ct. 1319, 134 L.Ed.2d 472 (1996) (no public disclosure where documents did not mention defendant); *Cooper v. Blue Cross and Blue Shield of Florida, Inc.*, 19 F.3d 562, 566 (11th Cir.1994) (allegations in GAO report of widespread fraud that did not "specifically name or otherwise directly identif[y] [the defendant] are insufficient to trigger the jurisdictional bar").

In the present case, the Report contains no information implicating City or any of the other defendants in the allegations of overbilling and mischarging. Giles' First Amended Complaint, however, does contain specific instances of City's involvement in the alleged overbilling and mischarges. It appears that the information found in Giles' complaint is based upon her firsthand knowledge and work as an auditor for City. (*See* First Amended Complaint, ¶¶ 35–54.) As such, Giles disclosed new information to the federal government that was based on her work auditing the invoices and supporting documentation submitted by the debris removal contractors. Accordingly, Giles is entitled to a reward for bringing new information of fraudulent claims to the federal government's attention. *See Aflatooni*, 163 F.3d at 522.

Therefore, the source of the allegations in Giles' First Amended Complaint was her firsthand knowledge gained while working as an auditor for City.

**3. Original source of disclosures to federal government**

■ Defendants also argue that Giles is not the original source of the allegations in the First Amended Complaint and that, therefore, the action is barred. Section 3730(e)(4)(B) states:

> For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4)(B).

Giles' complaint alleges that she had firsthand knowledge of the overbilling and mischarging practices. Giles was acting as an auditor for City with the responsibility to review invoices and supporting documentation from debris removal contractors. (*See* First Amended Complaint, ¶ 35.)

The cases cited by the Dixon Defendants are inapposite. In each case the relator learned from a third party the information that formed the basis of the allegations. For example, in *Devlin*, the relator "did not make a genuinely valuable contribution to the exposure of the alleged fraud" simply by contacting parties who did have firsthand knowledge and then filing a complaint. *Devlin*, 84 F.3d at 362.[6]

Furthermore, it is clear that Giles voluntarily disclosed the allegations to the federal government. She does not allege that she was employed by the federal government at the time she contacted the United

---

**6.** The remaining cases cited in Defendant Dixon's brief at pages 7–10 each involve circumstances in which the relator learned information from a third party and thus need not be addressed.

States Attorney's Office. Accordingly, cases holding that disclosures by federal government employees were involuntary due to the relator's federal employment status are inapposite.

### C. City's "Cooperative Federalism" Argument

▇ City has also argued that application of the FCA civil liability provision is preempted by FEMA regulations. (*See* Mot. at 9–10.) City's argument is misguided. Giles' complaint alleges that City and debris removal contractors filed false claims seeking reimbursement from disaster relief funds. The action is not for violations of FEMA regulations. City has supplied no authority for the proposition that FEMA regulations preempt claims brought under the FCA.[7]

### D. New Arguments Asserted in City's Reply Brief

▇ It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 894–95, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

▇ City asserts in its reply that a stay of the proceedings would be appropriate in light of the pending United States Supreme Court decision in the appeal of *United States ex rel. Stevens v. State of Vermont Agency of Natural Resources*, 162 F.3d 195 (2d Cir.1998). It is not clear to the Court, however, that the Supreme Court's decision in that case will impact the issue in the present case. Specifically, while the Supreme Court may address the issue of whether a *state* is a person under the FCA, it is not clear that it will reach the issue of whether a *municipality* is a person under the FCA.

City has also offered new arguments in favor of dismissal based on the theories of constitutional standing, separation of powers and the Appointments Clause. In support of this argument, City cites *Riley v. St. Luke's Episcopal Hosp.*, 196 F.3d 514 (5th Cir.1999). The Ninth Circuit has previously held, however, that the FCA's qui tam provisions "do not exceed the limitations of Article III of the Constitution [standing], nor do they violate the constitutional principal of separation of powers, [nor] the Appointments Clause of Article II." *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 745 (9th Cir.1993).

## V. MITCHELL AND SARDIE MOTIONS

▇ To the extent that the motions filed by Defendants Mitchell and Sardie are based on the arguments addressed above, they are also denied. With regard to Mitchell's claim of improper service contained in his motion to dismiss filed on April 18, 2000, the Court finds that Mitchell was properly served pursuant to Federal Rule of Civil Procedure 4 and California Code of Civil Procedure § 415.40. After several attempts to serve Mitchell at the Lomita address (the same address listed on his motion to dismiss), the process server left the summons and complaint with someone over 18 years of age and mailed the documents on January 18, 2000, rendering service effective on January 28, 2000. Service complied with the Court's ex parte order entered January 11, 2000, extending the time to serve Mitchell to February 23, 2000. Therefore, Mitchell's claim of improper service is rejected.

---

7. The sole case cited by City, *United States ex rel. Hopper v. Anton*, 91 F.3d 1261 (9th Cir. 1996), awarded summary judgment to the Los Angeles Unified School District because no false claim had actually been made. It does not support City's argument here.

With regard to the motion to dismiss filed by Sardie, it appears to the Court that the arguments contained in the motion filed on May 8, 2000, are identical to the arguments addressed above. Assuming that any opposition filed by Giles would echo her previous arguments, the Court denies the motion for the same reasons.

## VI. CONCLUSION

For the foregoing reasons, the Court concludes that it retains subject matter jurisdiction over the case and that the First Amended Complaint is sufficient to raise a claim upon which relief may be granted. Therefore, defendants' motions to dismiss are denied.

**IT IS SO ORDERED.**