In re BUTTES GAS & OIL COMPANY, Debtor.

Leslie WAINSTEAD, Plaintiff,

v.

BUTTES GAS & OIL COMPANY, and Fusion Holdings Corporation, Defendants.

Bankruptcy No. 85–07494–H3–11.
Adv. No. 89–0430–H3.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

June 7, 1990.

Thomas S. Henderson, Lenard M. Parkins, Sheinfeld, Malley & Kay, Houston, Tex., for debtor.

Percy L. "Wayne" Isgitt, Isgitt & Associates, Inc., Houston, Tex., for Leslie Wainstead.

Kenneth R. Wynne, Bracewell & Patterson, Houston, Tex., for Fusion Holdings Corp.

## MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

Came on for hearing the Motion to Dismiss filed by Fusion Holding Corporation, and after considering the evidence, pleadings, memoranda and arguments of counsel, the court makes the following Findings of Fact and Conclusions of Law and enters a separate Judgment in conjunction herewith granting the Motion to Dismiss. To the extent any findings of fact herein are construed to be conclusions of law, they are hereby adopted as such. To the extent any conclusions of law herein are construed to be findings of fact, they are hereby adopted as such.

### Findings of Fact

Fusion Holding Corporation filed a Motion to Dismiss (Docket No. 18) pursuant to Rule 12(b) of the Federal Rules of Civil Procedure made applicable by Bankruptcy Rule 7012(b). Fusion alleges this court lacks *in personam* jurisdiction over Fusion. Plaintiffs, Mary C. Williams and Sharjah Oil Holdings, Ltd., (permitted to

substitute as parties plaintiff for Leslie Wainstead) have filed an amended response to the Motion. (Docket No. 39.)

On December 29, 1969, Buttes Gas and Oil Company ("BGOC") and Clayco Petroleum Corporation ("Clayco") entered into a concession with the Ruler of Sharjah (the "Concession"). The Concession granted BGOC and Clayco the exclusive rights to search and drill for, produce, store, transport, and sell oil and gas within the Concession area. Subsequently, Clayco assigned its rights to BGOC.

On August 20, 1970 BGOC entered into an agreement with Leslie Wainstead (nominee for the plaintiffs). The court takes judicial notice of this agreement. This agreement granted Wainstead a 1¾% interest in the net profits arising from the Concession into its wholly owned subsidiary, Sharjah Petroleum Company ("Sharjah").

In March, 1972 Crescent Petroleum Company ("Crescent") was incorporated by BGOC to act as the operating company for the Concession. Crescent was organized to disburse revenues and pay expenses incurred attributable to the Concession. Stock in Crescent was sold by BGOC to third party oil companies. Approximately 75% of Crescent stock was sold to third parties.

On October 15 1982, BGOC and Buttes Gas and Oil Company International ("BGOCI") entered a reassignment agreement with the third party oil companies. As a result of this reassignment agreement, BGOC increased its ownership percentage in the Concession to 98.2%. BGOCI is a wholly owned subsidiary of BGOC.

On January 1, 1983 Hamid Jafar ("Jafar") acquired 20% of BGOC's stock in BGOCI. Jafar also acquired 20% of BGOC's stock in Sharjah. Jafar had served as President of BGOCI since 1982. In early 1984 Jafar became President of Crescent.

On October 1, 1983 BGOC sold an additional 20% of its stock in BGOCI to Fusion Holding Company, a Panamanian corporation controlled by Jafar. BGOC also sold 40% of its interest in Sharjah to Fusion.

In December, 1984 Dolphin Titan International, a subsidiary of BGOC, borrowed $20 million from Fusion. The loan agreement (first loan) provided that the closing would occur at the offices of counsel for Fusion. These offices were located in Houston. The agreement was signed and proceeds delivered at the closing in Houston. The agreement also provided that it was to be governed under the laws of the State of Texas.

The Dolphin Titan loan (first loan) was secured by convertible subordinated notes which were convertible into shares of stock in BGOC. Fusion had the option to forgive the indebtedness and acquire BGOC's remaining interest in BGOCI. In May, 1985 Fusion elected to acquire BGOCI, which held the rights in the Concession and BGOC's international gas and oil operations except production in Canada. The security agreement also provided that Fusion's rights and remedies, in the event of default, were governed by the Uniform Commercial Code of Texas.

In April, 1985 BGOC borrowed $8.3 million from Fusion. The loan (second loan) was secured by all of BGOC's stock in its wholly owned subsidiary, Buttes Resources Canada, Ltd. ("BRCL"). The second loan agreement contained the same provisions as to closing, as did the first agreement. The second agreement also contained the Texas choice of law provisions.

On December 20, 1988 this court confirmed BGOC's Fourth Amended Plan. The plan provided, *inter alia*, that BGOC would pay Fusion $3.5 million and deliver 49% of the stock in BRCL. The plan allowed Jafar, through Fusion, to acquire $3.5 million in cash, 49% of the stock in BRCL, plus an option to acquire an additional 11% of the stock in BRCL. The plan gave Jafar, through Fusion, control of the Canadian operations. Jafar, through Fusion, has acquired all of BGOC's overseas operations at a cost of $24.7 million.

### Conclusions of Law

■ On a motion to dismiss for lack of jurisdiction uncontroverted allegations in the plaintiffs' complaint must be taken as

true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiffs' favor for determining whether a *prima facie* case for personal jurisdiction exists. *D.J. Investments v. Metzeler Motorcycle Tire Agent Gregg*, 754 F.2d 542, 545–46 (5th Cir.1985). Plaintiffs have filed affidavits containing copies of all agreements.

■ A federal court may exercise jurisdiction over a non-resident defendant, provided state law confers such jurisdiction and its exercise complies with due process under the Constitution. *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir.1989) quoting *Interfirst Bank Clifton v. Fernandez*, 844 F.2d 279, 282 (5th Cir.1988). A two part test is applicable to determine questions of personal jurisdiction: whether there is statutory authority for the exercise of jurisdiction under the laws of the forum state and whether the exercise of jurisdiction complies with Federal Constitutional standards of due process. *Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir. 1985). The Texas Long–Arm Statute, Section 17.042 of the *Texas Civil Practice and Remedies Code*, has been interpreted to extend as far as permitted by due process, so the court need only to determine whether the exercise of personal jurisdiction over a non-resident defendant complies with due process. *WNS, Inc. v. Farrow, supra*, 884 F.2d at 202.

■ Due process requires that a court seeking to exercise personal jurisdiction over a non-resident defendant must find that the non-resident defendant has purposefully established minimum contacts with the forum state and that asserting jurisdiction will not offend traditional notions of fair play and justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Texas Supreme Court has enunciated a three pronged test to be applied when determining the Constitutional reach of Texas' jurisdiction in cases of only a few contacts. In order to assert jurisdiction, it must be found:

1. The non-resident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

2. The cause of action must arise from, or be connected with, such act or transaction, and

3. The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state offered the respective parties, and the basic equities of the situation.

*O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex.1966); *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 664 (Tex. 1987).

■ "Once a motion to dismiss for lack of personal jurisdiction has been presented to a district court by a non-resident defendant, the party who seeks to invoke the jurisdiction bears the burden of establishing contacts by the non-resident defendant sufficient to invoke the jurisdiction of the court." *WNS, Inc. v. Farrow, supra*, at 203 citing *D.J. Investments v. Metzeler Motorcycle Tire Agent Gregg*, 754 F.2d 542, 545 (5th Cir.1985). In satisfying this burden, when jurisdiction is to be decided on the basis of facts contained in affidavits, a party need only to present facts sufficient to constitute a *prima facie* case. *WNS, Inc., supra* at 203.

■ In the instant case, the court concludes that plaintiffs have satisfied the first condition, but not the second and accordingly not the third.

Plaintiffs, Mary C. Williams and Sharjah Oil Holdings, Ltd., allege that Fusion entered into two complex loan transactions with Buttes Gas and Oil Company, a Texas resident. In the loan agreements Fusion was to receive notice in Houston, deliver a portion of loan proceeds in Houston, and close on the agreement in Houston. Fusion also consented to the choice of law provision contained in the agreements naming Texas law as the governing law. Plain-

tiffs assert the choice of law provision demonstrates Fusion purposefully elected to invoke the benefits and protection of the laws of the State of Texas, and thus affords the court jurisdiction.

The Fifth Circuit has found jurisdiction where the non-resident defendant had signed a letter consenting to Texas foreclosure proceedings, assumed a loan agreement which contained a Texas choice of law provision, and where the collateral was located in Texas. *Interfirst Bank Clifton v. Fernandez, supra;* opinion withdrawn in part on other grounds, 853 F.2d 292 (1988). Based on these facts the court found the non-resident defendant had sufficient minimum contacts. However, the court stated that this case did not decide whether the combined effect of a Texas loan agreement and a Texas choice of law clause necessarily produces the requisite minimum contacts for specific jurisdiction; *id.* at 284, note 4.

Plaintiffs assert jurisdiction on the basis of the two loan agreements between BGOC and Fusion and the choice of law provision in those agreements. This appears to be the issue left undecided by the Fifth Circuit in *Interfirst Bank Clifton v. Fernandez, id.*

The First and Third Circuits have ruled on similar cases. The Third Circuit held that minimum contacts were not established where: the non-resident defendant, a Utah bank, concluded its negotiations and delivered security interests in New York; and defendant had no direct contact with the plaintiff, a Pennsylvania corporation, other than wire transfers. *Dollars Savings Bank v. First Security Bank of Utah,* 746 F.2d 208, 214 (3rd Cir.1984).

The First Circuit has ruled on a case in which Massachusetts residents borrowed money from a California loan broker. The First Circuit considered all of the "communications and transactions between the parties, before, during, and after the consummation of the contract, to determine the degree and type of contacts the defendants has with the forum, apart from the contact alone." *Ganis Corporation of California v. Jackson,* 822 F.2d 194, 197–98 (1st Cir.

1987). The court considered the choice of law provision and location of where the payments were to be sent. *Ganis Corporation,* 822 F.2d at 198. Location of payments in itself has been found by the United States Supreme Court to be a material contact in considering jurisdiction issues. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

The First Circuit found that the note, security agreement, itemized statement of financing, and truth in lending disclosure statement were all signed on the California lender's forms and were sufficient minimum contacts with the State of California. *Ganis Corporation of California v. Jackson, supra,* at 198.

Fusion has counsel in the forum state and a number of actions concerning the loan agreements have occurred within the forum state. The contract provisions and Fusion's actions show Fusion's deliberate affiliation with the forum state and the reasonable forseeability of possible litigation there. *Burger King Corp. v. Rudzewicz, supra,* at 482, 105 S.Ct. at 2187. The court holds that Fusion has purposefully established minimum contacts within this forum.

Plaintiffs must also, however, meet the "second prong" by establishing a nexus between the loan agreements which establish the minimum contacts, and plaintiff's cause of action. The exercise of *in personam* jurisdiction over a non-resident defendant is Constitutional only if the cause of action arises from the acts identified in the first prong of the test. *Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662 (Tex. 1987).

Plaintiffs have alleged a cause of action arising from the agreement between BGOC and Wainstead (as nominee for the plaintiffs) entered into in 1970. This agreement provided for payment of a percentage of the net profits to plaintiffs. Plaintiffs argue that when Fusion acquired ownership of the Concession they became the successors in interest to BGOC and are therefore responsible for all payments under the 1970 agreement.

 

Page 7 of plaintiffs' Response to Fusion's Brief (Docket No. 38) quotes the 1970 agreement between BGOC and Wainstead. Paragraph (b) of the section quoted specifically states that a third party has to "ratify in writing" its adherence to the agreement in order to transfer the obligation of BGOC. Plaintiffs have requested this court to order Fusion to ratify the agreement. Plaintiffs have alleged a cause of action arising from an agreement to which Fusion is not a party, nor is the subject agreement related to the loan agreements with Fusion. Plaintiffs' cause of action for payment of the net profits does not relate to the loan documents on which plaintiffs rely for jurisdiction.

> "The second prong when shown and coupled with the first prong of the *O'Brien* test, meets the requirements for specific personal jurisdiction to attach under *Burger King* ... i.e., the defendant purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Zac Smith & Co.*, 734 S.W.2d at 664 citing *Burger King Corp.*, 105 S.Ct. at 2182.

Plaintiffs rely on the two loan agreements between BGOC and Fusion to satisfy the requirement of minimum contacts under the first prong of the *O'Brien* test. Plaintiffs' cause of action is based on the agreement between BGOC and Wainstead. The action to compel Fusion to pay the net profits does not arise out of the two loan agreements. Plaintiffs have failed to show the required nexus and have failed to meet the requirements for specific jurisdiction.

■ Plaintiffs have also alleged Fusion received a fraudulent conveyance or preferential transfer from BGOC. However, plaintiffs have offered no evidence of such a transaction. Additionally, these causes of action belong to BGOC rather than to plaintiffs. Finally, these claims appear to be directed at Hamid Jafar and not Fusion Holding Corporation. Plaintiffs have the burden of presenting facts sufficient to constitute a *prima facie* case. *WNS, Inc., supra*, at 203. Plaintiffs have failed to meet their burden of proof on these allegations.

Based on the foregoing, this court finds that Fusion's Motion to Dismiss for lack of jurisdiction should be granted. A separate Judgment will be entered by the court pursuant to the court's Findings of Fact and Conclusions of Law.