# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 18, 2013

Lyle W. Cayce
Clerk

No. 11-31124

SEVEN ARTS PICTURES, INCORPORATED, a Nevada Corporation,

Plaintiff-Appellant,

versus

JONESFILM, a Pennsylvania Joint Venture,

Defendant-Appellee,

versus

LEEWAY PROPERTIES, INCORPORATED,

Garnishee-Appellant.

* * * * * * * * * * * * * *

JONESFILM,

Creditor,

versus

PETER M. HOFFMAN,

Interested Party-Appellant.

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-MC-4814

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

It is a truth "universally acknowledged," that courts of justice have inherent power to require "submission to their lawful mandates." *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 227 (1821). The question is whether the district court abused its discretion by requiring Peter Hoffman to submit to its lawful mandates. Hoffman ignored the court's orders for months based on what he thought were "substantial justifications," which he neglected to share with the court. Because the court did not abuse its discretion in that or any other of its rulings, we affirm.

I.

Jonesfilm holds judgments of almost $1 million from state and federal courts in California against Hoffman and several companies controlled by or affiliated with him (the "judgment debtors"), including Seven Arts Pictures, Inc. ("SAP"). Upon learning that Hoffman and the other judgment debtors owned or controlled several Louisiana limited liability companies, Jonesfilm registered the judgments in federal court, seeking to enforce and collect on them. In October 2010, the court ordered Hoffman and the judgment debtors to produce

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-31124

Schedule K-1s, financial statements, and tax returns (the "charging orders"). Instead of objecting to the charging orders or asking the court to modify or vacate them, Hoffman just ignored them.

In January 2011, the district court garnished funds held on behalf of the judgment debtors by the Louisiana companies ("garnishees"), including Leeway Properties, Inc. ("Leeway"), and ordered the garnishees to answer garnishment interrogatories. The garnishees, including Leeway, were served with the garnishment order on January 27, 2011.

Leeway initially asserted that it held no garnished funds as of January 27.[1] Months later, however, Leeway admitted that it had actually held $174,769.56—received from a judgment debtor, and subsequently transferred to Hoffman, two other judgment debtors, and the judgment debtors' certified public accountants ("CPAs")—on that date. Leeway professed to know nothing about who owned the funds. The funds had been transferred without authorization, Leeway averred, by an employee seeking to cover up her embezzlement scheme.

In March, Jonesfilm asked the court to hold Hoffman and the judgment debtors in contempt for failing to comply with the charging orders, to compel the garnishees to completely and accurately answer the garnishment interrogatories, and for attorney's fees. In August, it asked the court to order Leeway and Hoffman to deliver the garnished funds immediately. The court referred both motions to a magistrate judge ("MJ").

The MJ issued his report and recommendations in October 2011, finding that the judgment debtors, including Hoffman, had disobeyed the charging orders by failing to deliver financial documents; that Leeway held $174,769.56

---

[1] Hoffman—Leeway's vice president, secretary, director, signatory of bank accounts, addressee and recipient of bank statements, bookkeeper, recordkeeper, and manager—signed the interrogatory answers on behalf of every garnishee except Leeway. Susan Hoffman, his wife, who owned the company but knew little about its financial records, signed for Leeway.

No. 11-31124

of garnished funds when served with the garnishment order; that in violation of the garnishment order, $74,769.56 had been transferred to judgment debtors, including Hoffman, and $100,000 had been transferred to pay the judgment debtors' CPAs; that the garnishees' interrogatory answers were and continued to be inaccurate and incomplete; and that Jonesfilm had incurred necessary and reasonable fees of $21,357.50 to pursue its contempt and compulsion motions.

The MJ recommended that the district court hold Hoffman and the other judgment debtors in contempt for disobeying the charging orders; that it order Hoffman and Leeway to deliver $174,769.56 of garnished funds to Jonesfilm; that it compel Leeway to provide complete and accurate supplemental interrogatory answers; and that it award Jonesfilm $21,357.50 in attorney's fees. After considering objections, the court approved and adopted the MJ's report and ordered the recommended relief. SAP, Hoffman, and Leeway appeal.

## II.

"We review contempt orders and sanctions imposed thereunder for an abuse of discretion." *Whitcraft v. Brown*, 570 F.3d 268, 271 (5th Cir. 2009). We review the district court's factual findings for clear error and its conclusions of law *de novo. Id.* The court's discretion to impose sanctions includes the authority to award damages[2] and attorney's fees.[3] Reviewing the imposition of such sanctions, "we will not substitute our judgment for that of the district court." *City of Jackson*, 359 F.3d at 731. We also review discovery rulings, including rulings on motions to compel, for abuse of discretion. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817 (5th Cir. 2004).

---

[2] *See Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) (noting the district court's "broad discretion" in assessing compensatory damages).

[3] *See United States v. City of Jackson*, 359 F.3d 727, 732 (5th Cir. 2004).

No. 11-31124

III.

A.

"A movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence (1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992). Hoffman and SAP acknowledge that the charging orders required them to disclose various financial documents to Jonesfilm and that they failed to do so. Nonetheless, they assert that the district court abused its discretion by holding them in contempt without considering the "substantial justification" for their conduct.[4]

The court did not abuse its discretion. A litigant may not "make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, . . . [otherwise,] the 'judicial power of the United States' would be a mere mockery." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911). When a party violates a court order without objecting to it, asking the court to modify or vacate it, or even informing the court why it cannot or will not obey it, the court may hold the party in contempt without first deciding whether the disobedience was justified.

---

[4] Hoffman and SAP also contend that Federal Rule of Civil Procedure 37(a) applied to Jonesfilm's motion for contempt and required the district court to consider their substantial justification for disobedience. In their two-paragraph argument, they cite no authority for the proposition that Rule 37(a) applied, so "we consider the challenge abandoned for being inadequately briefed." *L&A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994); *See also* FED. R. APP. P. 28 (a)(9) (requiring "citations to the authorities . . . on which the appellant relies"). Furthermore, even if Rule 37 applied, it grants the court discretion to treat "as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." FED. R. CIV. P. 37(b)(2)(A). The court need not consider a litigant's "substantial justification" except as a reason not to require the litigant to pay otherwise mandatory attorney's fees. FED. R. CIV. P. 37(b)(2)(C). In any case, Hoffman and SAP's justifications were not substantial. *See infra.* Finally, officers of this court would be well advised to read more carefully before asserting demonstrable falsehoods such as "[t]he only reference to 'contempt' in Rule 37 is in (b)(1) . . . ."

No. 11-31124

None of the cases cited by Hoffman and SAP holds otherwise. In *A&H Sportswear Co. v. Victoria's Secret Stores, Inc.*, 134 F. Supp. 2d 668, 670 (E.D. Pa. 2001), for example, the court noted that a party should not be held in contempt "where there is ground to doubt the wrongfulness of the [party's] conduct." The issue was whether there was an order binding on the party, not whether the party had some justification for defying the court. *Id.* The decision in *In re C.B.S., Inc.*, 570 F. Supp. 578 (E.D. La. 1983),[5] is similarly inapposite. There, the district court exercised its discretion not to hold CBS in criminal contempt for refusing to hand over a transcript of an upcoming *60 Minutes* episode to a judge who needed to decide whether to enjoin the broadcast. *Id.* at 584–85. Among the reasons for the decision were that the judge's contemplated prior restraint would have been unconstitutional, that CBS had "continually objected" to the order, and that CBS had "little or no time to seek writs to appeal." *Id.* Even if Hoffman and SAP's proffered justifications were legitimate, they failed to object to the charging orders in any way in advance of the contempt proceedings.

Supposing Hoffman and SAP had objected to the charging orders, their proffered justifications are insubstantial. They claimed that (1) the district court lacked personal jurisdiction over Hoffman[6] and that (2) they should not have been required to release tax returns, which, in SAP's case, were not available at the time.

1.

Hoffman maintains that the district court lacked jurisdiction over him because he resides in California and has not had continuous and systematic

---

[5] An appeal brought by private prosecutors was dismissed for lack of jurisdiction under the name *United States v. McKenzie*, 735 F.2d 907 (5th Cir. 1984).

[6] SAP did not appeal the order denying SAP's motion to dismiss for lack of jurisdiction.

No. 11-31124

contacts with Louisiana.  Jonesfilm responds that Hoffman waived his objection to jurisdiction and is subject to general jurisdiction in Louisiana in any event.

Whether the court properly exercised jurisdiction over a defendant is a question of law that we review *de novo*.  *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).  Where the alleged facts are disputed, "the party who seeks to invoke the jurisdiction of the district court bears the burden of establishing contacts by the nonresident defendant sufficient to invoke the jurisdiction of the court."  *Id.* at 216–17 (quoting *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)).  Where a court considers whether to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the party seeking to invoke jurisdiction must make only a *prima facie* showing, and the court must accept as true that party's allegations and resolve all factual disputes in its favor.  *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999).[7]

"A federal court sitting in diversity must satisfy two requirements to exercise personal jurisdiction over a nonresident defendant."  *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*,  688 F.3d 214, 220 (5th Cir. 2012).  "First, the forum state's long-arm statute must confer personal jurisdiction.  Second, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment."  *Id.*  Because Louisiana's long-arm statute extends personal jurisdiction to the limits of due process, we need only con-

---

[7] Hoffman failed to ask the district court to dismiss for lack of jurisdiction until after he had filed the notice of appeal, which places this appeal in an usual procedural posture—we are not directly reviewing a ruling of the district court.  Meanwhile, the district court has ruled, three times, in various permutations of litigation between these parties, that Hoffman is subject to general jurisdiction in Louisiana. *See Seven Arts Pictures, Inc. v. Jonesfilm*, Nos. 09-4814, 09-4815, 2012 WL 5398439, at *10 (E.D. La. Nov. 1, 2012); *Leeway Props., Inc. v. Jonesfilm*, No. 11-2628, 2012 WL 4471848, at *5 (E.D. La. Sept. 27, 2012); *Jonesfilm v. Hoffman*, No. 11-1994, 2012 WL 4325461, at *3–5 (E. D. La. Sept. 20, 2012).  Because all of the necessary evidence is in the record before us, and because we do not wish to waste judicial resources, we assume, *arguendo*, that Hoffman has preserved his objection, and we proceed to rule on its merits.

No. 11-31124

sider the limitations of the Fourteenth Amendment. *See Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999).

No one contends that this suit arises out of Hoffman's contacts with Louisiana. Therefore, personal jurisdiction is proper only if his contacts with the state were "continuous and systematic," giving the state general jurisdiction over any action brought against him,[8] and if it would be fair to subject him to suit there. *See Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). In evaluating fairness, we consider (1) the burden on Hoffman, (2) Jonesfilm's interest in securing relief, (3) Louisiana's interests, (4) the judicial system's interest in obtaining an efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies. *Bullion*, 895 F.2d at 216 n.5.

Jonesfilm presents overwhelming evidence of Hoffman's continuous and systematic contacts with Louisiana.[9] Hoffman repeatedly claimed residence there, served as a registered agent for a Louisiana limited liability company (which required him, by law, to be a Louisiana citizen residing there), had an ownership interest in and managed real estate in Louisiana, and engaged in substantial business within the state. Although Hoffman disputes Jonesfilm's contentions, Jonesfilm has made a *prima facie* showing, especially given that "the court must accept as true the nonmover's allegations and resolve all factual disputes it its favor." *Guidry*, 188 F.3d at 625.

It was fair to subject Hoffman to suit in Louisiana. He has held himself out as a resident of the state, and the burden on him is minimal seeing as much of his business is done in the state and he owns residences there. Jonesfilm

---

[8] *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9, 415 (1984); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779–80 (5th Cir. 1986) (finding general jurisdiction based on defendant's "constant and extensive personal and business connections" with forum state).

[9] *See also Hoffman*, 2012 WL 4325461, at *4–5 (holding Hoffman subject to general jurisdiction in Louisiana).

No. 11-31124

seeks to satisfy its outstanding judgments against Hoffman using his Louisiana property, which gives Louisiana an interest in the outcome of this litigation.

Additionally, this is one of several lawsuits among these parties pending in the Eastern District of Louisiana. The district court has expended substantial time and resources adjudicating these various matters, and judicial efficiency weighs in favor of exercising jurisdiction. Ultimately, these factors indicate that exercising general personal jurisdiction over Hoffman comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Therefore, Hoffman is subject to general jurisdiction in Louisiana; his conduct was not substantially justified by the court's supposed lack of jurisdiction over him.

2.

Hoffman and SAP contend that they should not have been ordered to disclose their tax returns in postjudgment discovery. This court rejected a similar argument in *FDIC v. LeGrand*, 43 F.3d 163, 165 (5th Cir. 1995), and affirmed a holding of civil contempt against a party who had failed "to comply with a postjudgment discovery order compelling the production of his federal income tax returns." "The scope of postjudgment discovery is very broad to permit a judgment creditor to discover assets upon which execution may be made." *Id.* at 172. When a judgment creditor seeks information regarding a judgment debtor's financial position, the "relevance of the tax returns to a judgment creditor is virtually presumed." *Id.* A judgment debtor opposing production of relevant material would be required "to show that other sources exist from which the information" sought could be obtained. *Id.*

Hoffman and SAP have presented no evidence establishing other sources from which Jonesfilm could have obtained the information in their tax returns. Furthermore, Hoffman and SAP do not even assert that they should not have

9

No. 11-31124

been ordered to disclose the other financial documents that they failed to produce. The district court did not abuse its discretion by holding them in contempt for failing to turn over their financial documents, including tax returns.

SAP's assertion that its tax returns were unavailable fails to justify its behavior. It also demonstrates the fundamentally misguided nature of Hoffman and SAP's argument and reveals the depth of their contempt for the district court. If SAP's tax returns were unavailable, the proper response was to inform the court of that fact, not to ignore orders until a contempt motion was brought. Any of SAP and Hoffman's justifications could have supported a motion to modify or vacate the charging orders, but none of them comes close to justifying the utter disregard for the district court.

## B.

Leeway and Hoffman object to the order requiring them immediately to deliver $174,769.56 in garnished funds to Jonesfilm. Neither disputes (1) that as of January 28, 2011, when Leeway was served with the garnishment order, Leeway had $174,769.56 in a City National Bank account; (2) that the money had been received by Leeway from a judgment debtor; or (3) that, after the money was garnished, and in violation of the garnishment order, the funds were transferred to Hoffman, two of his co-judgment debtors, and the judgment debtors' CPAs.

## 1.

Leeway contends that it should not have been ordered to deliver the money to Jonesfilm, because it does not know who owns the money, it was unaware of the money when garnished, and the funds were transferred as part of an embezzlement scheme by a former employee. Leeway presented the same arguments to the MJ, who rejected them. Nothing in Leeway's brief alleges any error of law

10

No. 11-31124

or fact by the district court.

Before concluding that the court did not abuse its discretion as to Leeway, we pause briefly to point out the thin evidence of any embezzlement scheme. Leeway references a police report and a bank's letter to Hoffman but has presented no independent evidence to support its claims. The report and the letter consist entirely of allegations made by SAP and Hoffman to the police and to the bank, respectively. Furthermore, before the MJ, Leeway maintained the bank's investigation would take an additional ninety days. That was over a year ago, yet Leeway has brought no additional evidence to support its allegations.

2.

Hoffman maintains that he should not have been ordered to deliver the money to Jonesfilm, because he was not subject to the garnishment order and cannot be held responsible for the unauthorized transfer of funds. Despite that conclusional argument, he was subject to the garnishment order. Orders granting injunctions bind "the parties' officers, agents, servants, employees, and attorneys" and "other persons who are in active concert" with them or with the parties. FED R. CIV. P. 65(d)(2).[10]

Hoffman was therefore subject to the garnishment order in two ways. First, he served as director, officer, bank statement recipient, bank signatory, keeper of the books, and manager of Leeway. Second, he acted "in active concert" with Leeway, because he personally, or companies of which he was CEO, or his CPAs, received every penny of the garnished funds from Leeway.

As this court recognized in *Waffenschmidt v. MacKay*, 763 F.2d 711, 717 (5th Cir. 1985), "[a]n injunction binds not only the parties subject thereto, but

---

[10] Persons to be bound must "receive actual notice" of the order "by personal service or otherwise." FED. R. CIV. P. 65(d)(2). Hoffman does not dispute that he received actual notice of the order, with which he was served as registered agent for two of the garnishees.

also nonparties who act with the enjoined party." In that case, the district court enjoined MacKay, and all persons acting in concert with him, from transferring any funds received from the Waffenschmidts. *Id.* at 714. MacKay was ordered to deposit certain funds with the court, which he was unable to do because he had transferred them to nonparties, in violation of the injunction. *Id.* The court found two of the nonparties in contempt, and imposed fines in the amounts received, because they were agents or employees of MacKay and acted "in active concert" with him by receiving the funds. *Id.* at 715 We upheld the fines, finding that the court had not clearly erred when it held that they received the money with knowledge of the injunction. *Id.* at 723–26.

Hoffman's attempts to distinguish *Waffenschmidt* are unpersuasive. He characterizes the garnishment order as "a discovery order," not an injunction. That portion of the order instructing the garnishees to answer interrogatories was a discovery order; the portion garnishing funds and ordering their seizure by the U.S. Marshal granted an injunction.[11] Hoffman also protests that the injunction in *Waffenschmidt* was specifically directed at all persons "acting in concert" with the defendant. Under Rule 65, however, orders bind persons "in active concert," irrespective of whether the court recites that specific language.

Hoffman's argument that the funds were transferred by an employee who was not authorized to do so, as part of an embezzlement scheme, is unsupported by any independent evidence. The district court did not abuse its discretion by implicitly rejecting it.

---

[11] *See Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 75 (1967) (stating that an order qualified as "'order granting an injunction' with the meaning of Rule 65(d)" where "it was an equitable decree compelling obedience under the threat of contempt").

No. 11-31124

C.

Leeway contends that the district court erred by granting Jonesfilm's motion to compel answers to the garnishment interrogatories. In ten pages of briefing, Leeway fails to cite a single binding authority or respond in any way to the substance of the order. A brief perusal of the district court's docket reveals Leeway's fundamental mistake—it cut and pasted its argument from the motion it won, not the motion it lost.

Jonesfilm moved to compel answers to the garnishment interrogatories in March, and to compel production of subpoenaed documents from Leeway in September. The court granted the first motion but denied in part and dismissed in part the second. Leeway appealed the first; no one appealed the second. Nonetheless, almost all of Leeway's brief on this issue is cut and pasted from its response to the second motion. Therefore, most of Leeway's arguments—that its response to the subpoena was sufficient, its objections were valid, and other sources existed from which Jonesfilm could obtain the subpoenaed information—are irrelevant.

Leeway's only pertinent argument is that the garnishment interrogatories exceeded the scope of Louisiana's garnishment procedures. But under the federal rules, judgment creditors are allowed to seek postjudgment discovery from "any person," using "the procedure of the state where the court is located" *or* the federal rules. FED. R. CIV. P. 69(a).[12] Even if Leeway had fulfilled its obligations under Louisiana law, nothing precluded Jonesfilm from propounding interrogatories under the federal rules. The district court did not abuse its discretion by ordering Leeway to answer those interrogatories accurately and completely.

---

[12] *See also LeGrand*, 43 F.3d at 171 (rejecting argument that "state procedural rules apply to the determination of the post-judgment discovery issue").

No. 11-31124

D.

SAP and Leeway argue that the district court was incorrect in ordering them to pay attorney's fees to Jonesfilm. Specifically, they maintain the court erred by (1) not conducting an evidentiary hearing and by awarding (2) fees for all legal work incurred in Louisiana, (3) fees in excess of $2000, and (4) fees incurred to seek further disclosure from the garnishees.

SAP and Leeway rely on *Cook v. Ochsner Foundation Hospital*, 559 F.2d 270 (5th Cir. 1977), to support their demand for an evidentiary hearing. There, we reversed as to the amount of attorney's fees and remanded for an evidentiary hearing, because "[t]he affidavits filed created conflicts which must be resolved and, in the absence of a stipulation that the trial court will rule based upon the affidavits, such a conflict requires a due process hearing." *Id.* at 273. Despite SAP and Leeway's assertions, they are not entitled to an evidentiary hearing as a matter of course.[13] Jonesfilm submitted affidavits detailing its hours and fees, to which SAP and Leeway did not object. Nor did they request an evidentiary hearing. Because there was no conflict that needed to be resolved, because the MJ judge had full knowledge of the relevant facts, and because attorney's fees are usually mandated where a party violates a court order on a discovery matter,[14] the MJ was not required to hold an evidentiary hearing.

As to the remaining objections, the MJ consulted extensive caselaw and carefully considered the reasonableness of the hourly rates and the hours expended. The MJ even trimmed thousands of dollars from Jonesfilm's

---

[13] *See, e.g.*, *Alizadeh v. Safeway Stores, Inc.*, 910 F.2d 234, 236–37 & 237 n.2 (5th Cir. 1990) (holding that no hearing was required where judge had full knowledge of relevant facts, parties had opportunity to submit motions explaining positions, and no special circumstances existed); *Gulf Union Indus., Inc. v. Formation Sec., Inc.*, 842 F.2d 762, 766–68 (5th Cir. 1988) (holding that refusal to hold hearing was not a denial of due process where attorney's fees were required under law, proponents submitted detailed affidavits, and opponents had opportunity to object but submitted only conclusional statements).

[14] *See, e.g.*, FED. R. CIV. P. 37(b)(2)(C).

No. 11-31124

requested fees, because some of the work "contributed very little to the arguments . . . on the motion." Nothing in SAP and Leeway's citation-free, conclusional arguments suggests that the court abused its discretion.

## IV.

It has not escaped our notice that Hoffman, SAP, and Leeway openly defied the district court's order. They appealed it but failed to ask the court to stay the order pending appeal. Adding to their, especially Hoffman's, ongoing demonstration of contempt for the judicial process, they failed to "comply promptly with the order pending appeal," as was their obligation absent a stay.[15] After nearly a year, the district court held them in contempt again, for disobeying the order. Hoffman, SAP, and Leeway would be wise to fulfill their obligations to the court without delay.

AFFIRMED.

---

[15] *Maness v. Meyers*, 419 U.S. 449, 458–59 (1975) ("Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.").